This case was brought under the Workmen's Compensation Act by Earl D. McKenzie (employee) to recover benefits from American Bread Company of Alabama, Inc., d/b/a/ Sunbeam Bakery (employer), claiming that he suffered a back injury during his employment. The trial court found for the employer, and the employee appeals. We affirm.
The dispositive issue is whether the trial court erred in finding that the employee's injury occurred at the earlier of two alleged dates and that the employee did not give proper notice within the ninety-day statutory period.
At the outset we note that our standard of review in workmen's compensation cases is a two-step process. "Initially, the reviewing court will look to see if there is any legal evidence to support the trial court's findings. If such legal evidence is found, then the reviewing court determines whether any reasonable view of that evidence supports the trial court's judgment." Ex parte Eastwood Foods, Inc., 575 So.2d 91, 93
(Ala. 1991).
The record reveals that the employee is a mechanic and has worked for the employer for sixteen years. His duties included lifting, stooping, bending, standing, walking, and carrying weights. He was sixty years *Page 669 
old at the time of the hearing and has about an eleventh-grade education.
We note that the employee's testimony was somewhat vague and indefinite as to dates. He testified that he was injured while lifting an engine "head on a truck" and that it weighed approximately one hundred pounds. At that time he felt a "tingle" in his back. He told another mechanic about the injury and subsequently went to a chiropractor. The chiropractor told him that he had "three discs out" and that it looked like one was ruptured. Not long after the injury he told his supervisor that he hurt his back lifting the head and had to go to a chiropractor. He also stated that about that same time he told the plant manager that he had hurt his back.
The employee further testified that he continued to work after the incident. After putting an air-conditioner compressor into one of the vehicles, he was unable to straighten up and his back hurt from being bent under the hood almost all day. He went back to the chiropractor, but did not tell him about the new incident because "[h]e already knew it. He was giving me treatments."
The employee's left leg then started hurting, and he went to his medical doctor a month or two after he saw the chiropractor. He was hospitalized, but received no relief from the problem. He was next referred to an orthopedist, who operated on him for a ruptured disc. The surgery was followed by problems due to a staph infection, which required several hospitalizations and months in bed. He is still unable to walk any distance, to stoop, to bend, to lift, or to twist.
The employee verified his statement made in interrogatories that, although he could not remember the exact date, the first incident occurred around April 11, 1988. However, a form was filled out at the chiropractor's on September 18, 1987, which contradicted the April 1988 date, in which the employee stated that he did not report the injury to his employer, that medical care had not been recommended by the employer, and that he had pulled the engine head. He also stated that he continued to see the chiropractor for back, leg, and hip problems, which were the problems for which he had surgery. He worked full time after the incident with the engine head, but had to be hospitalized after the incident with the air-conditioner compressor.
The employee's supervisor testified that he first knew of the employee's back problems in the fall of 1987 when the employee told him that he and his son had changed a complete engine in his son's car without the help of any kind of a lift and that the employee had to go to the chiropractor. On April 25, 1988, the supervisor completed an absentee report slip because the employee told the supervisor that he had to go to the doctor as he had hurt his back. If he had been told that it was an on-the-job injury, he would have filled out a first report of injury rather than an absentee report slip. The employee then told him that he had hurt his back while changing a compressor early in April. None of the other employees seemed to have knowledge of the incident.
The employer's personnel manager testified that the week of April 25, 1988, was the first time that he had any knowledge regarding an injury of the employee. The employee's wife called the personnel manager and told him about the injury, and he told her that he had to have all the information about it. The employee came by the next week and told him that he did not know how he had hurt himself but that it could have happened while he was putting on an air compressor. The personnel manager did not know that the employee was seeing a chiropractor in the fall of 1987.
The orthopedist who operated on the employee testified at deposition that the employee was "completely and permanently disabled from performing the usual activities of a working man" and that these limitations were permanent. His records also state that the employee told him that the onset of lumbar complaints occurred after lifting an engine block in March 1988 and that the employee's conditions are related to that injury. *Page 670 
The trial court found that the employee sustained an injury on or before September 18, 1987, in the course of employment with the employer and that the employer first received notice of the injury on or about April 25, 1988. The trial court then concluded that the statutory notice requirements had not been met and entered the judgment in favor of the employer.
The employee first contends that the statutory notice was met when, he claims, the employee informed his manager right after he hurt his back that he had hurt his back. He further contends that, where the employer is aware of the employee's back problems and his use of a chiropractor and is also familiar with the heavy-duty nature of the employee's job, statutory notice is provided.
Section 25-5-78, Ala. Code 1975, provides for written notice of an accident to an employer as follows:
 "Every injured employee or his representative shall, within five days after the occurrence of an accident, give or cause to be given to the employer written notice of the accident, and the employee, if he fails to give such notice, shall not be entitled to physician's or medical fees nor any compensation which may have accrued under the terms of this article and article 2 of this chapter, unless it can be shown that the party required to give such notice had been prevented from doing so by reason of physical or mental incapacity, other than minority, fraud or deceit, or equal good reason, but no compensation shall be payable unless such written notice is given within 90 days after the occurrence of the accident or, where death results, within 90 days after the death."
However, written notice is not a requirement where it is shown that the employer had actual knowledge of the injury.Stinson v. Liberty Mutual Insurance Co., 395 So.2d 1032
(Ala.Civ.App. 1981).
The employee argues that, although there is a dispute between the employee and his supervisor as to the date of notice, it is clear that the supervisor knew within 90 days of the visits to a chiropractor and that, therefore, the plant manager knew as well and the requisite notice was supplied under § 25-5-78. He cites Russell Coal Co. v. Williams, 550 So.2d 1007, 1012
(Ala.Civ.App. 1989), for the proposition that actual notice is "knowledge of such information as would put a reasonable man on inquiry," and argues further that knowledge of the heavy-duty mechanic's job would have provided the plant manager with reasonable notice to inquire. Although the fact that the employer was aware of the employee's pain or medical problem is not enough alone to charge the employer with actual knowledge, information connecting the injury with work activity may be enough to put it on reasonable notice to inquire further. Id.
In Russell, this court held that it was "a permissible inference" for the trial court to conclude that the employer had information that would put a reasonable employer on inquiry. However, in the instant case, the trial court did not find such an inference.
In a workmen's compensation case a review of the weight or preponderance of the evidence is not properly before this court; rather, we may only inquire whether any legal evidence supports the trial court's findings, and the trial court's findings are conclusive where the testimony is conflicting.Suit v. Hudson Metals, Inc., 414 So.2d 115
(Ala.Civ.App. 1982).
In the present case, we find that there is legal evidence supporting the trial court's finding that statutory notice had not been given, and since the testimony is conflicting, its findings are conclusive. We also find that, although an inference that the employer was on notice to inquire further was permissible, the trial court was not required to make such an inference.
The employee next contends that the employer waived notice of the September 1987 accident by its actions in completing the proper forms in April 1988 so that its insurance carrier would begin paying workmen's compensation benefits and medical expenses for the employee.
The provisions for notice may be waived, or the situation may not require the giving *Page 671 
of notice. Ex parte National Pipe Foundry Co., 213 Ala. 605,105 So. 693 (1925). See also City of Foley v. Terry, 278 Ala. 30, 175 So.2d 461 (1965) (wherein our supreme court held that notice of the accident was waived by the City of Foley's admission that the employee's immediate supervisor took him to the hospital the day after he was injured and that it paid a part of his medical bills until he died). In the instant case, however, payments began only after notice of the April 1988 incident, which was after the end of the statutory period for the giving of notice for the September 1987 incident. Therefore, the employee could not have been misled during the statutory period, causing him to refrain from making a claim during that period, and we find that in this instance there was no waiver of the notice requirement.
Finally, the employee contends that there is no medical evidence of causation to support the trial court's finding that the surgery was a result of an injury suffered on or about September 18, 1987, and that no new injury was suffered during March or April 1988. He argues that the only medical evidence was provided by the doctors and does not link the September 1987 incident with the surgery and subsequent problems and that the employee's own testimony did not provide such evidence.
However, the trial court may make reasonable inferences from the evidence, including conclusions of medical facts that are not within the knowledge of the medical experts. The totality of the circumstances must support the finding of medical causation. Ex parte Price, 555 So.2d 1060 (Ala. 1989).
Here, although the medical evidence did not relate the September 1987 incident to the employee's surgery, we note that the doctors were not told about that incident. However, the employee's own testimony links the September 1987 incident to the medical problems. He testified that the chiropractor told him that he had "three discs out" and that one appeared to be ruptured. He did not tell the chiropractor about the new incident because "he already knew it." The trial court could have concluded that he returned for more treatment for the existing injury. The employee also testified that he continued to see the chiropractor for back, leg, and hip problems for which the surgery was performed. We cannot say that the trial court erred in determining from this evidence that the September 1987 incident was the cause of the problems and the later surgery.
In light of the above, we find that there is legal evidence to support the trial court's finding and that a reasonable view of the evidence supports the trial court's judgment.
This case is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur.