YATES, Judge.
This is a workmen’s compensation case.
In February 1991, Helen Miller and Clint Miller sued Mayfield Timber Company, Inc., (Mayfield Timber) for workmen’s compensation benefits because of the death of Donnell Miller, Sr. (decedent). Helen Miller sued as the widow of the decedent and as the admin-istratrix of the decedent’s estate, and Clint Miller sued as the dependent child of the decedent.
Following an ore tenus proceeding, the trial court entered an order finding that the decedent was not employed by Mayfield Timber at the time of his death and holding, therefore, that the Millers were not entitled to recover. The Millers appealed.
The only issue presented for review is whether the trial court erred in finding that the decedent was not an employee of May-field Timber when, according to the Millers, he was hired, paid, and supervised by May-field Timber.
Our review of a workmen’s compensation case is a two-step process. Ex parte Eastwood Foods, Inc., 575 So.2d 91 (Ala. 1991). First, we look to see if there is any legal evidence to support the findings of the trial court. If such evidence is found, we then determine whether any reasonable view of that evidence supports the trial court’s judgment. Id.
Furthermore, when determining whether an employer-employee relationship exists, courts look to the reserved right of control rather than the actual exercise of control. Turnipseed v. McCafferty, 521 So.2d 31 (Ala.Civ.App.1987).
“An employer-employee relationship is not established if the right of control does not extend any farther than directing what is to be ultimately accomplished. But if an individual retains the right to direct the manner in which the task is to be done or if that individual does in fact dictate the manner of operation, then an employer-employee relationship is established.
“Certain factors which demonstrate a right to control include (1) direct evidence which demonstrates a right or exercise of control, (2) the method by which the individual receives payment for his services, whether equipment is furnished or not, *187 and (4) whether the individual has the right to terminate.” (Citations omitted.)
Id. at 32-33.
At the outset, we note that the testimony presented to the trial court was much in conflict, with the two primary witnesses often contradicting each other and sometimes contradicting their own testimony. We are not to review the weight or preponderance of the evidence; instead, we may only review whether any legal evidence supports the findings of the trial court, and such findings are conclusive when the testimony is conflicting. McKenzie v. American Bread Co. of Alabama, 579 So.2d 667 (Ala.Civ.App.1991).
At trial, Tom Coleman testified that he and the decedent were in the practice of cutting pulpwood together, but that they had not worked for two weeks prior to the date of the fatal accident. Coleman stated that he and the decedent had been working for Ike Jim-erson before this two-week period of non-work. When working for Jimerson in the past, he used Jimerson’s truck, equipment, and fuel, and he and the decedent were using these on the day of the decedent’s death.
Coleman’s testimony further revealed that, following the period of non-work, and after receiving third-hand information indicating that he should go to Mayfield Timber, he picked up the decedent on a Monday morning at 7:00 a.m. and drove to the wood yard of Bob Mayfield, the owner of Mayfield Timber. Thereafter, Coleman and the decedent travelled to a wildlife reserve and met with Bob Mayfield, who showed them which timber within the reserve to cut and which not to cut. This was the first time the job was discussed with Mayfield, and Coleman stated that, at the time, he did not know who owned the timber, but was told by Mayfield that the cut timber was to be taken to Mayfield Timber.
Coleman and the decedent began working the next morning and were able to cut, load, and deliver two loads that day. An employee of Mayfield Timber visited the job site to show them which wood to cut, but there were no other instructions on when to start and stop cutting, when to take breaks, when and where to haul the timber, or how much timber to haul. The next day, the decedent was killed when a tree the decedent cut fell on him.
Although Coleman testified that he was paid by Bob Mayfield after the decedent’s death, nothing was withheld from his check. Also, Coleman’s testimony was contradictory as to whom he considered himself to be working for at the time of the accident, and on cross-examination he stated that he did not know the connection between Mayfield and Jimerson.
Bob Mayfield in his testimony stated that, to his. knowledge, the decedent had worked for Jimerson for as long as he [Mayfield] had known him. He further testified that he had bought timber from Jimerson in the past but that neither Jimerson nor the decedent had ever cut timber for him. Although he had contacted Jimerson about two months prior to the accident, he later called Lamar Nicholson, another woodcutter, to cut for him after learning Jimerson would be out of the county.
He stated that he never contacted Coleman or the decedent; they just showed up for work one morning. He told them to haul all wood over four inches in diameter to Mayfield Timber and that they could sell and keep the proceeds of all other smaller wood. Mayfield verified he paid Coleman directly instead of Jimerson, because Coleman asked him to. He stated that both Coleman and the decedent worked for Jimerson, not him, and that he considered Jimerson’s relationship with him to be as an independent contractor.
Considering the record evidence in light of the attendant presumptions, we find that there was legal evidence to support the finding of the trial court that the decedent was not an employee of Mayfield Timber at the time of his death and we conclude that a reasonable view of that evidence supports the trial court’s judgment. Eastwood Foods, 575 So.2d 91. Accordingly, the judgment is due to be affirmed.
AFFIRMED.
THIGPEN, J., concurs.
ROBERTSON, P.J., dissents.