This case presents a question regarding the standard of review in a workmen's compensation appeal. Because this Court and the Court of Civil Appeals, in several decisions, have stated the applicable rule of review in such cases differently, we take this opportunity to reaffirm the statement of the rule of review contained in Ex parte Patterson, 561 So.2d 236
(Ala. 1990).
After an examination of the facts of this case, we hold that the Court of Civil Appeals, in view of those facts, correctly reversed the judgment of the trial court.
 FACTS
Dwight A. Gilbreath injured both of his hands while working at a chicken processing plant operated by Eastwood Foods, Inc. He subsequently filed a complaint in the Marshall Circuit Court under the Workmen's Compensation Act, Ala. Code 1975, § 25-5-1
et seq. The trial court, after hearing ore tenus evidence, found that Gilbreath had suffered an accident arising out of and in the course of his employment at the chicken processing plant, and that it had resulted in permanent partial disability of 50%.
Gilbreath later filed a motion for modification of the judgment, contending that the trial court had erred in not finding that he had suffered a permanent total disability. The trial judge, by written order, declined to modify the final judgment. Gilbreath appealed to the Court of Civil Appeals, *Page 92 
which, relying on Ex parte Patterson, 561 So.2d 236 (Ala. 1990), reversed the trial court's judgment and remanded the case for the entry of an order finding Gilbreath to be permanently and totally disabled. See Gilbreath v. Eastwood Foods, Inc.,575 So.2d 87 (Ala.Civ.App. 1990). We granted Eastwood Foods' petition for a writ of certiorari.
 I
The issue before this Court is whether the scope of review on appeal has been substantially altered in workmen's compensation cases by Ex parte Patterson, or whether the Court of Civil Appeals misconstrued Ex parte Patterson and thereby committed error in reversing the judgment of the trial court. We will first address the issue of the correctness of Ex partePatterson and its progeny.
 II
In Ex parte Patterson, the undisputed evidence showed that the plaintiff had sustained personal injuries, including a broken jaw, loss of part of a finger, and back injuries while at work at the Opelika Foundry Company, Inc. There were no witnesses to the incident. The plaintiff did not know what specifically had caused his injury, but he reasoned that iron had fallen on him. The trial court held that the plaintiff had failed to carry his burden of proof, stating:
 " '[T]here was no evidence that any overhead moving of material was taking place. No testimony was presented that material was strewn in the area where the injury occurred so as to warrant a conclusion that anything had fallen on him. In short, the only evidence before the Court is that Plaintiff was injured. In no way is it shown to be related to his employment.' "
Ex parte Patterson at 238.
The Court of Civil Appeals affirmed. On appeal, this Court reversed, following the standard of review in workmen's compensation cases set forth in Ex parte Neal, 423 So.2d 850
(Ala. 1982), which limited our review to "a determination of whether there is any legal evidence to support the trial court's findings of fact," and in which we stated that "if any reasonable view of the evidence supports the findings of the trial court, this Court may then determine whether the correct legal conclusions have been drawn therefrom. Ex parte Neal,423 So.2d 850 (Ala. 1982)." Patterson at 238.
Justice Houston, writing for the majority inPatterson, held that the only reasonable view of the evidence in that case required a finding that Patterson's injuries were the result of an accident that was causally connected to his employment, notwithstanding the fact that there was no direct
evidence as to causation of the accident other than the physical circumstances surrounding the accident and the injury itself. Patterson at 239.
 III
Eastwood Foods contends that Ex parte Patterson "imposed a radical and substantial departure from the long settled and established practice in the courts of this state." After a review of the law dealing with the proper scope of review by the appellate courts of this state in workmen's compensation cases, we find that Ex parte Patterson did not adopt a new standard of review for appellate courts, but rather followed one of the earliest decisions of this Court on this subject, Exparte Sloss-Sheffield Steel Iron Co., 207 Ala. 219,92 So. 458 (1922).
In Sloss-Sheffield, the Court stated that "if, on any reasonable view of the evidence it will support the conclusion reached in the trial court, the finding and judgment will not be disturbed." 207 Ala. at 221, 92 So. 458 at 460. We have examined the cases of the appellate courts sinceSloss-Sheffield, and we agree with the Court of Civil Appeals that the standard of review set out in Sloss-Sheffield has not been clearly and consistently stated in these cases, although the substance of the rule has remained the same.
Some of these cases hold that a judgment will not be reversed if there is "any *Page 93 
legal evidence" to support the findings of the trial court.Associated Forest Materials v. Keller, 537 So.2d 957
(Ala.Civ.App. 1988); Elbert Greeson Hosiery Mills, Inc. v. Ivey,472 So.2d 1049 (Ala.Civ.App. 1985); United Service Insurance Co.v. Donaldson, 254 Ala. 204, 48 So.2d 3 (1950); Gadsden IronWorks, Inc. v. Beasley, 249 Ala. 115, 30 So.2d 10 (1947).
Other cases uphold the findings of the trial court if they are supported by "any evidence." Wheeler v. Lake ForestProperty Owners' Association, Inc., 523 So.2d 1083
(Ala.Civ.App. 1988); American Tennis Courts, Inc. v. Hinton,378 So.2d 235 (Ala.Civ.App. 1979) cert. denied, 378 So.2d 239
(Ala. 1979); Thomas v. Gulf States Paper Corp., 276 Ala. 660,166 So.2d 104 (1964); and Dean v. Stockham Pipe Fittings Co.,220 Ala. 25, 123 So. 225 (1929).
Another line of cases would not disturb the trial court's findings on appeal where there is "any substantial legal evidence" to support the findings of the trial court. TigerMotor Co. v. Winslett, 278 Ala. 108, 176 So.2d 39 (1965);Williams v. Tennessee Valley Butane Co., 265 Ala. 145,90 So.2d 84 (1956); Bell v. Tennessee Coal, Iron R.R. Co., 247 Ala. 394, 24 So.2d 443 (1945); Ex parte Coleman, 211 Ala. 248,100 So. 114 (1924).
The rule that has emerged as controlling is a combination of the above-stated standards. It is not a new standard, but one that through the years has been stated differently and, therefore, seems to reflect a change from the standard originally set forth by this court long ago. In 1947, the Court stated:
 "[T]his court long ago announced the rule governing our review of cases arising under the Workmen's Compensation Act. We have uniformly held that if there is any reasonable view of the evidence that will support the conclusion reached by the trial court, the finding and judgment will not be disturbed. Ex parte Sloss-Sheffield Steel Iron Co., 207 Ala. 219, 92 So. 458 [(1922)]. For later cases see Houser v. Young, 247 Ala. 562, 25 So.2d 421 [(1946)]; Malbis Bakery Co., Inc. v. Collins, 245 Ala. 84, 15 So.2d 705 [(1943)]."
Southern Cotton Oil Co. v. Bruce, 249 Ala. 675, 32 So.2d 666
(1947).
 IV
The standard of appellate review in workmen's compensation cases is a two-step process. Initially, the reviewing court will look to see if there is any legal evidence to support the trial court's findings. If such evidence is found, then the reviewing court determines whether any reasonable view of that evidence supports the trial court's judgment.
Based on these principles, we hold that Ex parte Patterson is not an aberration of the traditional standard of appellate review, as Eastwood Foods claims; it is, in fact, a reaffirmation of the original standard of review. Of course, a trial court's "findings of fact" that are, in reality, an application of the law to the facts, or that are, stated differently, legal conclusions, do not come within the purview of the "presumption of correctness" standard.
 V
The question now becomes whether the Court of Civil Appeals misconstrued Ex parte Patterson, thereby committing error in the case at bar. Eastwood Foods contends that, as construed by the Court of Civil Appeals in this case, the Patterson
rule would have the appellate courts usurp the function and authority of the trial court and would alleviate the need for a hearing or other proceedings at the trial level; it says that "the appellate courts have now assumed the function of fact finders." Eastwood Foods' arguments are without merit.
The Court of Civil Appeals used Ex parte Patterson as authority in its opinion in this case of April 11, 1990, stating:
 "[T]his court is not permitted to select what it considers to be the appropriate standard of review. We are bound to follow the most recent state supreme court decision on the subject. Glass v. Hinde, 504 So.2d 316 (Ala.Civ.App. 1987); § 12-3-16, Code 1975. The most recent supreme court decision establishing a standard of review in workmen's compensation *Page 94 
cases is Ex parte Patterson, 561 So.2d 236
(Ala. 1990)."
In following Ex parte Patterson, that court applied the correct standard of review, and, applying that standard to the facts of this case, we hold that the Court of Civil Appeals reached the right result. We provide a brief summation of the facts to show why we reach this conclusion.
Gilbreath was injured when a box of chicken he was attempting to pull off a pallet fell and crushed his left hand. After having his left hand placed in a brace, Gilbreath returned to work. However, as Gilbreath used the left hand it became increasingly swollen and painful. Gilbreath was then referred to Dr. Phillip A. Maddox, an orthopedic surgeon, who ultimately operated upon the left hand. Dr. Maddox's diagnosis was "reflex sympathetic dystrophy," a condition affecting the central nervous system.
After Gilbreath had returned to work after the surgery, he suffered a second injury, causing similar pain and swelling in his right hand, which was also diagnosed as caused by "reflex sympathetic dystrophy." When Gilbreath's condition failed to respond to treatment, Dr. Maddox suggested that he "try to return to work, either find another job, which could be less strenuous on his hands, or to retire." Upon receiving this advice from Dr. Maddox, Gilbreath reported back to Eastwood Foods and was told that it had no work that he could do.
The trial court's amended order on "motion for modification" reads, in pertinent part, as follows:
 "Plaintiff is a 45-year old illiterate who has never done anything but manual labor except for one previous employment as a security guard. He has not worked since the condition in his hands stabilized; the middle of the back of each hand was visibly mildly swollen at the time of trial; he testified that there is constantly some degree of swelling and he has some degree of pain at all times. There was no testimony as to the degree of pain and especially no testimony that pain reached a level which would prevent plaintiff from concentrating on job tasks. He testified that his hands would swell from driving an automobile for extended periods of time; he can use a broom some but extended use causes swelling and pain; he occasionally drops and breaks dishes if he attempts to wash and dry dishes; he cannot use a hammer or screwdriver; his grip is a problem even with a coffee cup; he cannot make a garden or use a lawn mower; the problem with his hands was about the same at the time of trial as it was a year previously; he had made no real effort to find employment; he takes a prescription medication from Dr. Maddox but could not remember what the drug was.
". . . .
 "The only doctor who testified, by deposition, said that the plaintiff had a 1% impairment to the upper left extremity and also a 4% impairment of the upper right extremity or a whole person impairment of 3% 'based upon his sensibility and range of motion' and that the doctor '. . . felt he could return to some work that did not require strenuous or repetitive use of his hands.'
". . . .
 "[H]e could do [gainful] work, namely he could be a security guard. There is no evidence in this case that the plaintiff suffers distracting pain at any time, takes narcotic pain medicine or that he cannot walk, stand, sit or sit and stand constantly without pain or that he could not do any work of a light or sedentary nature that did not involve substantial or repetitive use of his hands.
 "This Court never seriously considered awarding permanent total disability, because the evidence presented failed to show that the plaintiff could not perform a full range of sedentary work and substantial light work which did not involve strenuous or repetitive use of his hands. As stated in the materials submitted by the plaintiff's attorney, the test for total permanent disability is 'the inability to obtain gainful employment or the inability to perform one's trade.' This Court is not reasonably satisfied that the plaintiff in this case is unable to obtain gainful employment and is not satisfied he could not work as a security guard or in similar employment. The Court has carefully *Page 95 
reconsidered the testimony in the case and its finding that the plaintiff is disabled as to future earnings by 50% and is satisfied that determination is correct."
On appeal, the Court of Civil Appeals agreed with the trial court that Gilbreath's injuries caused him to be unable to perform manual labor. From that initial point of agreement regarding the factual presence of supporting evidence, the Court of Civil Appeals then determined that no reasonable view of the evidence supported the trial court's finding that Gilbreath could be gainfully employed as a security guard or that he could be retrained for other gainful employment.
In making this determination, the Court of Civil Appeals first reviewed the definition of "total disability" set forth in Ala. Code 1975, § 25-5-57(a)(4)d.: "[A]ny physical injury or mental impairment resulting from an accident which . . . permanently and totally incapacitates the employee from working at and being retrained for gainful employment, shall constitute . . . the sole basis on which an award of permanent total disability may be based."
The Court of Civil Appeals found no evidence in the trial court record of the job requirements for a security guard, and concluded that there was also no evidence that Gilbreath could perform the duties of a security guard in his injured condition, stating:
 "[A] reasonable view of the evidence would suggest that a forty-five year old man who cannot read or write, who has trouble holding a cup of coffee in his hands, and who cannot use a hammer or screwdriver, cannot perform the duties of a security guard.
 Surely the duties of a security guard would involve the use of one's hands and arms. A security guard's duties would involve, for example, the ability to hold and use a gun or 'billy club,' to restrain or handcuff another person, to generally defend oneself, to drive an automobile, to punch a time clock, and to be able to coherently write simple reports and explain events in detail.
 After a careful review of the record, we are convinced that the only reasonable view of the evidence compels us to conclude that the offer to Gilbreath, by his employer, of a job as a security guard establishes neither a reasonably stable market for him, nor that he can be retrained to obtain other gainful employment."
The Court of Civil Appeals correctly applied the law to the undisputed facts and concluded that no reasonable view of the facts could support any conclusion other than that under the law Gilbreath was totally and permanently disabled.
We find no merit in Eastwood Foods' contention that the Court of Civil Appeals misinterpreted this Court's decision in Exparte Patterson. Eastwood Foods' arguments focus upon the perceived abrogation of the ore tenus rule, but fail to take into consideration that the ore tenus rule has no application where the facts are undisputed. Home Indemnity Co. v. ReedEquipment Co., 381 So.2d 45 (Ala. 1980); Stiles v. Brown,380 So.2d 792 (Ala. 1980).
For the foregoing reasons, the judgment of the Court of Civil Appeals is hereby affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, ALMON, SHORES, HOUSTON and STEAGALL, JJ., concur.