L. CHARLES WRIGHT, Retired Appellate Judge.
Silas Jackson filed a complaint for workmen’s compensation benefits in the Circuit Court of Mobile County against IMMS In *1060 dustrial Coatings, alleging that he was owed benefits for a work-related injury. Following oral proceedings, the trial court found that Jackson suffered a 15 percent permanent loss of his ability to earn. Jackson appeals.
Jackson asserts that his loss in earning capacity is greater than that determined by the trial court.
In a workmen’s compensation case, this court’s review is limited to a determination of whether there is any legal evidence to support the trial court’s conclusions. If a reasonable view of the evidence supports the findings of the trial court, this court may then determine whether the correct legal conclusions have been drawn therefrom. Ex parte Eastwood Foods, Inc., 575 So.2d 91 (Ala.1991).
The record reflects that Jackson was employed by IMMS as a journeyman painter. Jackson testified that on September 5, 1990 he climbed over two pipes to get to a work area and, shortly thereafter, while reaching down to pick up a package of cigarettes, felt a twinge in his back. He testified that he has suffered from back pain since that time.
Jackson was examined by Dr. Robert White, a neurosurgeon, on September 14, 1990. Dr. White diagnosed Jackson as suffering from lumbar stenosis, a congenital disease, and lumbar disc syndrome, a disc injury at the L4-5 location. Dr. White found that Jackson had reached maximum medical improvement in January 1991. At that time he gave him a permanent physical disability rating of five percent. Dr. White recommended that Jackson do no bending or climbing. Dr. White felt that Jackson’s condition limited him to sedentary work.
Jackson was subsequently examined by Dr. William Crotwell, an orthopedic surgeon. Dr. Crotwell also diagnosed lumbar disc syndrome and spinal stenosis. In January 1991 he found Jackson to be maximum medically improved and assessed a five percent physical disability rating. He restricted Jackson’s movements and recommended that Jackson return only to light or sedentary work activities.
In April 1991 Jackson was evaluated by the Rehabilitation Institute. The therapist noted that during the course of the evaluation Jackson demonstrated less than maximum effort. Jackson’s scores from a “pain drawing” correlated with the hysteria and hypochondriasis scales of the MMPI. There were inconsistencies in his work capacity evaluation. For example, the therapist found “that even though Mr. Jackson reports pain in his left leg more so than his right, he places most of his weight on his left.” The therapist further found:
“Upon taking his pulse rate at several intervals throughout his evaluation his pulse did not rise above 90 beats per minutes even when reporting that he was giving full effort and in ‘intense’ pain. With persons who are giving full effort and/or in intense pain a higher pulse rate is normally found.”
Jody Potts, a vocational specialist, initially opined that Jackson had suffered a 66 percent loss of access to and ability to do jobs in the economy. During further examination Potts increased the loss-of-eam-ing capacity to 83 percent. Potts testified that her conclusions were based on Jackson’s physical capabilities, as restricted by Dr. White and Dr. Crotwell. If Jackson could return to the work force as a full time employee, then his loss-of-earning capacity would be 66 percent. However, during examination she stated that the physicians’ restrictions limited Jackson to part-time sedentary work which would correlate to an 83 percent loss-of-eaming capacity.
James Coward, a second vocational counselor, initially testified that Jackson’s loss-of-eaming capacity was 44 percent. During examination, however, he stated that based on the doctors’ restrictions Jackson was capable of doing only part-time sedentary work which would increase the loss-of-earning capacity to 76 percent. Both opinions were based upon the medical limitations stated by the physicians.
Jackson testified that he has been in constant pain since the accident and that the medication he takes causes him to be groggy and drowsy. He testified that he is *1061 no longer able to perform simple household chores and that he is unable to sit, stand, or walk, without pain, for any significant amount of time.
Jackson is 39 years of age. He graduated from high school and has completed two years of college. While attending college, his major was business administration and computer science. He also worked in an administrative capacity for the Alabama National Guard for approximately 17 years.
The trial court has much discretion in determining the loss-of-earning capacity and may consider such factors as age, education, past work history, and the effect of the injury on the employee’s earning ability. DeHart v. Ideal Basic Indus., Inc., 527 So.2d 136 (Ala.Civ.App.1988). In arriving at its decision, the trial court may consider all the evidence, including its own observations, and interpret it according to its own best judgment. DeHart. The trial court is not bound by the opinions of expert witnesses, even if their opinions are uncon-troverted. DeHart.
In determining that Jackson had sustained a 15 percent loss in his earning capacity, the trial court made the following finding:
“In addition to the testimony of the Plaintiff and the Defendant, the Court has received and considered the testimony of the respective vocational employment experts for the Plaintiff and Defendant. The Plaintiff employee has graduated from high school and finished two years of college in a business/computer course. In addition, he was employed in an administrative capacity with the Alabama National Guard for approximately 17 years. From observing the Plaintiff in open court, the Court finds the Plaintiff employee to be articulate and well spoken. In addition, the Court observed the Plaintiff walking around the courtroom, the hall outside the courtroom, and sitting in the chair at counsel’s table. Although Plaintiff appeared in court walking with a cane, neither of the treating physicians prescribed any sort of cane or appliance for the Plaintiff. Although the Plaintiff employee claims permanent total disability as a result of the claimed injury, the Court finds that the Plaintiff has not met the burden of proof. The Court having considered all of the evidence and the demeanor and credibility of the various witnesses, finds that the Plaintiff employee is not permanently and totally disabled and that he is capable of engaging in gainful employment and training for gainful employment. The Court finds that the Plaintiff employee has suffered a fifteen (15%) percent loss of earning capacity as a result of the incident sued upon.”
In reviewing the record with the attendant presumptions we find that a reasonable view of the evidence supports the trial court’s conclusion that Jackson suffered no more than a 15 percent permanent partial loss in his earning capacity. Eastwood Foods.
The judgment of the trial court is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.