THIGPEN, Judge.
This is a workmen’s compensation case.
In March 1989, James 0. Hurt sustained an injury while working as a manual laborer for Fontaine Trailer Company (Fon-taine). Hurt reported the injury and received medical treatment, including neck surgery. At trial, it was stipulated that Hurt had received a total of $22,672.00 in temporary total disability benefits.
Hurt filed an action seeking permanent disability under the Alabama Workmen’s Compensation Act, Ala.Code 1975, § 25-5-88. After a hearing, the trial court ordered that Hurt was entitled to an additional $436.00 for temporary total disability benefits due to a previous computational error, and that Hurt sustained a permanent partial loss of earning capacity of ninety percent and was therefore entitled to an additional benefit of $190.80 for 191 weeks. Fontaine appeals.
Under our scope of review in workmen’s compensation cases, we must determine if there is any legal evidence to support the trial court’s findings. If the record contains such evidence, we must then determine whether any reasonable view of that evidence will support the trial court’s decision. Ex parte Eastwood Foods, Inc., 575 So.2d 91 (Ala.1991).
In its first issue, Fontaine argues that the evidence introduced at trial does not support a finding that Hurt sustained a permanent partial disability to the extent of ninety percent.
The record revealed that Hurt had a second-grade education and that he had performed manual labor his entire life. At the time of trial, Hurt was forty-six years old and he could not read or write, but he could sign his name.
Dr. Thomas Windham, a neurosurgeon, examined Hurt and performed an anterior cervical fusion. When he last saw Hurt in April 1990, Dr. Windham determined that Hurt had reached maximum medical improvement. Hurt, however, was still complaining of neck stiffness and pain, and Dr. Windham was convinced that Hurt was truthfully and accurately stating his symptoms. Dr. Windham determined that Hurt’s permanent medical impairment was ten percent. Dr. Windham also testified that he did not place any physical restrictions on Hurt,' such as restricting his stooping or bending, and stated that'these activities could not do any further damage to *267 Hurt’s neck, even though they might be painful.
Dr. Robert Griffin, a vocational expert, interviewed Hurt in August 1990, and they discussed Hurt’s age, education, work history, and physical ailments, and Dr. Griffin later reviewed Hurt’s medical records. Dr. Griffin testified that if his assessment of Hurt’s employability was based solely on Dr. Windham’s permanent disability rating, he would have rated Hurt’s impairment as being ten to fifteen percent. Once Dr. Griffin factored in the severe pain from which Hurt apparently suffered, however, Dr. Griffin was of the opinion that Hurt’s impairment was much greater. It was significant to Dr. Griffin that Hurt’s complaints of pain were thought to be truthful by Dr. Windham. Also, Dr. Griffin testified that, when he asked Hurt to grade his pain on a scale of zero (no pain) to ten (severe pain), Hurt responded that his pain ranged from two to three during relative inactivity, to ten during exertion.
Dr. Griffin further testified that Hurt indicated that he could not sit for long periods of time, that he could usually stand for only 20 minutes at a time, that he could walk only about 100 yards, that he usually spent about six hours each day lying down, and that he was limited in his ability to bend or stoop. Based on the degree of pain described by Hurt and on his educational limitations, Dr. Griffin testified that he was aware of no employment that Hurt could maintain, but he also testified that he occasionally saw illiterate people working on pre-1975 cars or pre-electronic ignition automobiles, since literacy is not a requirement to work on them.
Hurt testified that he still experienced pain, and that the pain had not lessened in the past year and a half. Hurt stated that he could raise both hands over his shoulders, although doing so resulted in pain. He testified that, although he has attempted to perform certain menial yard chores, as well as “piddle” on cars in his body shop, he never successfully accomplished anything. Hurt’s attempts to “piddle” consisted of polishing or buffing the chrome on his 1955 Ford. Hurt stated that he had, in fact, ruined several pieces of chrome because he did not have enough strength in his left arm to hold the chrome tightly against the buffer, and that he had spray-painted some fenders, but made a “mess” of them. Hurt testified, “I’m not calling it work because I know what work is. I am talking piddling. I can get out there and piddle for 45 minutes and I hurt so bad I can’t stand it.”
Fontaine relies in large part on a surveillance videotape, which was introduced into evidence after Hurt’s testimony, and which depicted Hurt’s activities in his body shop on April 24, 1991. Testimony by the surveillance crew reveals that Hurt was observed for approximately four hours, although the videotape was edited to only forty minutes in length. Testimony also reveals that during the entire surveillance, Hurt did not sit down. Our review of this videotape shows Hurt standing and buffing or sanding an item, using what appears to be a hand-held water hose with a sprayer attachment, and lifting a fender frame from a bench and carrying it into his workshop.
In determining the extent of disability, it is the duty of the trial court to review all the evidence and to make its own observations. Blue Bell, Inc. v. Nichols, 479 So.2d 1264 (Ala.Civ.App.1985).
Several of Hurt’s friends testified that they did not think that Hurt could obtain any type of physical employment, and that since the injury, Hurt appeared to be in significant pain. One witness testified that Hurt now brought his own automobile to the witness for repairs, because Hurt could no longer perform the necessary repairs himself, due to his injuries.
After reviewing the testimony of Hurt and viewing the videotape, we consider Hurt’s testimony regarding his attempts at automotive body work to be substantially consistent with our observations. Although Hurt lifted a ten to fifteen pound fender over his head, his earlier testimony reveals that he could lift his hands over his head. Whether he was in actual pain while working in his shop, was experiencing one of his “good days,” or no longer experi- *268 enees pain is not for us to decide. The weight of the evidence is for the trial court to determine. Blue Bell, supra. Where testimony conflicts regarding the extent of an employee’s disability, the trial court’s findings are conclusive if there is testimony to support its conclusions. Suit v. Hudson Metals, Inc., 414 So.2d 115 (Ala.Civ.App.1982).
Fontaine implied that Hurt may be working in his body shop, because he has purchased several automotive parts since his injury. Testimony, however, established that Hurt often purchased parts for his friends, since he received a discount from a local auto parts store. Additionally, there was no evidence to indicate that Hurt was profiting from these actions.
Accordingly, we determine that legal evidence exists which, when viewed reasonably, supports the trial court’s decision that Hurt is permanently partially disabled to an extent of ninety percent, and that he cannot obtain reasonably gainful employment in his trade as a manual laborer due to his physical pain. Eastwood Foods, supra.
Second, Fontaine contends that the trial court’s judgment was in error because, Fontaine says, it did not comply with the requirements of Ala. Code 1975, § 25-5-88; specifically, Fontaine says the judgment did not set forth sufficient findings of fact and conclusions of law.
On numerous occasions, this court has held that substantial compliance with § 25-5-88 is sufficient. See, e.g., Littleton v. Gold Kist, Inc., 480 So.2d 1236 (Ala.Civ.App.1985). Although we agree that the trial court’s judgment in the instant case is omissive in its recital of medical and vocational findings, the record reveals sufficient findings to uphold the trial court’s judgment. Littleton, supra.
Hurt’s request for attorney’s fees, in accordance with Rule 38, Alabama Rules of Appellate Procedure, for a frivolous appeal, is denied.
Based on the foregoing, this case is due to be, and it is hereby, affirmed.
AFFIRMED.
ROBERTSON, P.J., and RUSSELL, J., concur.