YATES, Judge.
Wesley Kittler (employee) filed a complaint against the City of Montgomery (employer) in this workers’ compensation action, alleging that he “sustained injuries arising out of his employment” and requesting judgment for compensation and medical expenses. He also filed a motion requesting an award of temporary total disability benefits. The employer denied the allegations of the complaint and objected to the motion. The trial court issued a final order granting the employee’s request for temporary total disability benefits, and the employer appeals. We affirm.
The two-step standard of review in workers’ compensation cases requires that we first look to see if there is any legal evidence that supports the trial court’s findings. If such evidence is found, we then determine whether any reasonable view of the evidence supports the trial court’s judgment. Ex parte Eastwood Foods, Inc., 575 So.2d 91 (Ala.1991).
The record reveals that the employee was employed by the employer as a laborer and that he was loading broken concrete onto a dump truck when a second dump truck backed into him. He was taken to the emergency room, where X-rays were taken of his shoulder. He was advised that he could return to work in three days.
The employee was unable to return to work, and he was subsequently diagnosed as having a lumbosacral strain. Although various treatments were prescribed, the employee was unable to return to work. He complained of pain in his right knee, and arthroscopic surgery was subsequently performed by Dr. W.L. Pinchback, Jr., an orthopedic surgeon. He was treated by several physicians during this time.
In a letter dated April 19, 1990, Dr. Glenn Barnes, an orthopedic surgeon who had treated the employee, provided an update on the employee’s complaints and treatment. He stated the following:
“At the present time the patient continues to complain of severe back discomfort with radiation into the right buttock, posterior thigh, calf and foot and also some numbness and tingling in the right foot. The discomfort is aggravated by walking and long periods of standing and sitting, as well as riding in a car. He has also noted that coughing and sneezing tend to increase the pain. In addition to this, he is complaining of intermittent pain in the right shoulder and also from time to time he states that his right knee tends to give way with him.
[[Image here]]
“I am unable to account for [the employee’s] continued and prolonged complaints. I do not feel that he is disabled, at least, from the organic standpoint.”
The employee was released by Dr. Barnes to return to work, and on May 24, 1990, the employer informed him that he should report back to work for normal duty. He did not report for work as requested, and on June 8, 1990, was considered to have resigned due to unauthorized absences.
Dr. Hamp Greene then examined the employee. He stated in a letter written on December 17, 1990, that the employee “walks with a peculiar posture with his hand clawed on the right and his right foot turned in and down. Of interest, there are well developed calluses in his right hand that he claims to be. unable to use.” His impression was of “functional right hemi-paresis, conversion hysteria versus malingering.”
Dr. Pinchback wrote to the employer in June 1990 that, although he could find no objective reasons for the employee’s low back pain, the employee “is perceiving significant pain and discomfort and [that it] is, therefore, causing him significant impairment.” He opined that the employee would not improve without strong psychological and psychiatric support and further stated that the employee’s “psychological overload [is a] direct result[ ] of his being injured and his body is responding to his *297 injury and not his injury a result of his psychological problems.”
Dr. Karl Kirkland, a clinical psychologist who evaluated the employee in 1989, wrote to the employer in January 1991. He stated that, after examining the reports of Drs. Barnes and Greene, his findings in 1989 were confirmed. These findings were that the main factor in the employee’s inability to return to gainful employment were “pre-morbid [prior to the disease] personality adjustment problems that are in all likelihood unrelated to his accident. The accident may have been a contributing factor in terms of causal agents, but certainly is not the main factor in preventing his return to gainful employment at this time.” He further stated that the lack of improvement indicated the possibility of malingering by the employee.
On June 4, 1991, Dr. Judith Rogers, a clinical psychologist, prepared a written report after interviewing the employee and reviewing his medical records. She attempted to administer the “MMPI-2” to the employee, but stated that he “did not appear to be able to read well enough to actually take this test.” She stated that the test usually requires at least an eighth-grade reading level and noted that an evaluation from the Vocational Rehabilitation Center indicated that he was reading below the third-grade level.
Dr. Rogers further said that she was “amazed” that Dr. Kirkland was able to get a valid MMPI profile from the employee and that he based much of his opinion on an MMPI profile. She felt that, because he had worked, paid child support, supported his common-law wife and children, and had enjoyed the hobby of weight lifting, the employee had not demonstrated any “pre-morbid personality adjustment problems,” as claimed by Dr. Kirkland. Dr. Rogers stated that “[this] would suggest to me that there is much less likelihood of intentional malingering, and a greater likelihood that there is a conversion-type disorder in operation.” She recommended that the employee be referred to a hospital inpatient psychiatric unit, pain control unit, or rehabilitation unit. Dr. Rogers opined in her deposition that the conversion hysteria developed after the accident.
Conversion disorder is discussed in the Diagnostic and Statistical Manual of Mental Disorders, Third Edition-Revised (1987), in pertinent part as follows:
“The essential feature of this disorder is an alteration or loss of physical functioning that suggests physical disorder, but that instead is apparently an expression of a psychological conflict or need. The symptoms of the disturbance are not intentionally produced (as in Factitious Disorder or Malingering) and, after appropriate investigation, cannot be explained by any physical disorder or known pathophysiologic mechanism.”
The employee testified that he had suffered with knee problems, as well as back and shoulder problems, from the time of the accident, that he is not able to use his right hand, that he experiences pain in his lower back and leg and that he cannot sleep at night, that inability to walk and to use his right arm prevent him from working, and that he previously had been a weight lifter.
The employer contends that the trial court erred in granting the motion for the award of temporary total disability benefits because, it claims, there was no evidence that the psychological injury or disorder was produced or proximately caused by a physical injury to the employee’s body which arose out of or in the course of his employment.
“The law in Alabama is well settled that our Workmen’s Compensation Act does not extend coverage to mental disorders or injuries that were neither produced nor proximately caused by some physical injury to the claimant’s body. Therefore, for the employee to be entitled to recover in this instance, she must demonstrate a causal connection between her alleged disability and a physical injury to her body.”
Rodgers v. Bruno’s, Inc., 554 So.2d 1034 (Ala.Civ.App.1989) (citations omitted); see also Magouirk v. United Parcel Service, 496 So.2d 55 (Ala.Civ.App.1986).
*298 “If it is established by legal evidence that an employee has suffered a physical injury or trauma in the line and scope of his employment and he develops a neurosis as a proximate result of such injury or trauma which causes or contributes to an occupational or physical disability, such disability is compensable; and the employer must pay the actual cost of reasonable, necessary psychiatric treatment.”
Transco Energy Co. v. Tyson, 497 So.2d 184, 186 (Ala.Civ.App.1986).
In the present case the employee clearly suffered a physical injury or trauma in the line and scope of his employment, and there was evidence that the employee’s present problems are the direct result of that injury. We do not weigh the evidence, as that is the duty of the trial court, and its findings are conclusive on conflicting testimony where there is any evidence to support its conclusions. Blue Circle, Inc. v. Williams, 579 So.2d 630 (Ala.Civ.App.1991).
Having found evidence to support the trial court’s findings, we hold that a reasonable view of that evidence supports the trial court’s judgment. Eastwood Foods, 575 So.2d 91 (Ala.1991). The trial court’s judgment is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur.