ROBERTSON, Presiding Judge.
Willie Sheffield sustained an injury to his back while performing his job for his employer, Brown & Root Construction, Inc. (Brown & Root). He subsequently filed suit against Brown & Root, seeking workers’ compensation benefits for permanent total disability.
The parties stipulated, inter alia, that Sheffield’s average weekly earnings at the time of his injury were $480; that for a period of 96 weeks following his injury, Sheffield received temporary total disability benefits in the amount of $30,721.92; and that up to the date of the trial, Sheffield had received permanent partial disability benefits for 113 weeks at $220 per week for a total of $24,860.
After an ore tenus proceeding, the trial court entered an order wherein it found Sheffield to be permanently partially disabled and to have “suffered a reduced earning capacity such that [he] can now earn and engage in such employment as would pay a minimum wage of $170 per week” (a 64.58% loss of earning capacity). Based on Sheffield’s loss of earning capacity and his stipulated pre-injury earnings of $480 per week, the trial court found that he was entitled to receive permanent partial disability benefits at the rate of $206.65 per week. The court further found that Brown & Root was entitled to credit for overpaying Sheffield’s permanent partial disability benefits by $13.35 per week for 113 weeks prior to trial. After awarding a 15% fee to Sheffield’s attorney and crediting Brown & Root for the temporary total and permanent partial disability benefits it had already paid, the court ordered Brown & Root to pay Sheffield permanent partial disability benefits of $206.65 per week for 42.6373 consecutive weeks.
Sheffield appeals, contending that the trial court should have found him to be permanently and totally disabled. He also contends that, even if he is found to be only partially disabled, the trial court miscalculated his remaining benefits.
*598 We note at the outset that, when reviewing workers’ compensation cases, this court will first look to see if there is any legal evidence to support the findings of the trial court. If such evidence is found, we must then determine whether any reasonable view of that evidence supports the trial court’s judgment. Ex parte Eastwood Foods, Inc., 575 So.2d 91 (Ala.1991).
The record reveals these facts: On April 10,1988, Sheffield was employed by Brown & Root as a pipe fitter and crane rigger. That day he injured his back while attempting to lift a large piece of iron grating. After notifying Brown & Root of his injury, Sheffield sought medical treatment. The injury was diagnosed as a ruptured disc, and in June 1988 Sheffield underwent back surgery. A lengthy period of postoperative recovery ensued, during which time Sheffield remained off work. His treating physician determined him to be at maximum medical improvement in October 1989. He assigned Sheffield a physical impairment rating of 40% at that time and released him to return to full-time work, recommending that Sheffield be restricted from heavy lifting and from activities involving bending, squatting, or reaching above shoulder level. Sheffield, however, maintained that he could not resume work with Brown & Root due to constant pain in his back, hips, and legs.
Sheffield contends that he is unable to engage in any gainful employment, and, therefore, that the trial court was in error when it found he was able to work, albeit at a decreased earning capacity. At trial he testified that he has difficulty performing routine daily activities, cannot stand for any length of time without pain, and is unable to stoop, bend, or lift. He also testified that he experiences pain when walking on hard surfaces and when riding in automobiles; however, he indicated that he drives his automobile several times every day.
Sheffield was 53 years old at the time of trial. He possesses a high school equivalency diploma and owns a barbershop. He worked as a barber for approximately nine years prior to his employment with Brown & Root. There was testimony that, while much of Sheffield’s previous employment involved manual labor, he also has considerable experience in land, timber, and mineral rights sales. Evidence indicated that he engaged in numerous real estate transactions between the time of his injury and the trial. However, Sheffield maintained that all but two of these transactions were the result of work he had done prior to his injury.
The trial court was presented with deposition testimony from Sheffield’s treating physician, a neurosurgeon. The treating physician indicated that, while he believed Sheffield’s complaints of pain to be genuine and generally consistent with his injury, he could not say that all the pain Sheffield complained of was directly related to his on-the-job injury. He was of the opinion that Sheffield was overweight and that if he lost weight and exercised, “he wouldn’t have the back complaints that he has.” He also stated that he did not understand why Sheffield would experience pain while standing on level ground.
It was the treating physician’s opinion that Sheffield could return to full-time employment notwithstanding his physical restrictions; that he could perform activities similar to those performed by checkout clerks and ticket vendors; and that he needed to be retrained and directed to some lighter work where he could alternate, between standing and sitting. He indicated that he had encouraged Sheffield to return to work as a barber.
The vocational expert testifying for Sheffield stated that Sheffield was “totally disabled from the labor market.” The expert’s opinion was based upon Sheffield’s age, education, work history, and physical restrictions, and upon the expert’s knowledge of the labor market in the general area. However, a second vocational expert, appearing on behalf of Brown & Root, testified that, based upon substantially the same factors, it was her opinion that Sheffield had suffered only a 30% reduction in earning capacity. This expert considered Sheffield to be employable in four separate job categories, ranging from light delivery work to work as a barber.
The law is clear that the trial court has the duty of determining the extent of an employee’s disability. See DeHart v. Ideal Basic Industries, Inc., 527 So.2d 136 (Ala.Civ.App.1988). In arriving at its determina *599 tion, the trial court must consider all the evidence, including its own observations. Chadwick v. Gold Kist, Inc., 598 So.2d 948 (Ala.Civ.App.1992). The trial court is the arbiter of the credibility of witnesses, and its factual findings based on conflicting testimony are conclusive. Washington v. Warrior Tractor & Equipment Co., 487 So.2d 1371 (AIa.Civ.App.1986).
We have reviewed the record with the attendant legal principles in mind and find that there was legal evidence to support the trial court’s findings as to Sheffield’s permanent partial disability and loss of ability to earn and that a reasonable view of that evidence supports the trial court’s judgment. Consequently, we affirm the trial court’s judgment as to that issue.
Sheffield next contends that, even if he is only partially disabled, the trial court miscalculated his future benefits when it awarded him $206.65 per week in permanent partial disability benefits for only 42.6373 more weeks. He concedes that § 25-5-57(a)(3)g., Code 1975, entitles Brown & Root to a credit for the 96 weeks of temporary total disability benefits paid. He maintains, however, that if his permanent disability is only partial, he is entitled to 91 more weeks of permanent partial disability benefits (300 weeks less 96 weeks of temporary total disability payments and less 113 weeks of partial disability payments received up to the date of trial). See § 25-5-57(a)(3)g. We agree with Sheffield and reverse this part of the trial court’s judgment. We remand this case for a recalculation of Sheffield’s benefits, taking into account, of course, any overpayment and attorney’s fee. The attorney’s fee award is not at issue before this court; however, the amount awarded plus the $13.35 per week overpayment should be pro-rated over the remaining weeks of benefits (91 weeks at time of trial).
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THIGPEN and YATES, JJ., concur.