ROBERTSON,
Presiding Judge.
This is a workmen’s compensation case.
On January 21, 1992, William F. Butler, Jr., filed a complaint in the Jefferson County Circuit Court, seeking workmen’s compensation benefits from The Birmingham News Company. Butler alleged that he had suffered an injury or occupational disease (a loss of hearing) that arose out of and in the course of his 14r-year employment with The Birmingham News. The Birmingham News answered and raised as an affirmative defense that Butler’s claim was barred by the statute of limitations.
Following an ore tenus proceeding, the trial court entered a judgment in favor of The Birmingham News. Butler appeals, *298 raising one issue: whether the trial court erred in finding a lack of medical causation for Butler’s hearing loss.
In workmen’s compensation cases, a two-step standard of review is used. Initially, this court must determine if there is any legal evidence to support the trial court’s findings; if such evidence is found, then this court must determine whether any reasonable view of that evidence supports the judgment of the trial court. Ex Parte Eastwood Foods, Inc., 575 So.2d 91 (Ala.1991). However, this standard of review is applicable to the trial court’s findings of fact and not its conclusions of law. Ex parte Cash, 624 So.2d 576 (Ala.1993).
The record discloses that Butler was employed by The Birmingham News from 1977 to 1991, when he left his job because of concerns regarding his hearing loss. Butler began his employment with The Birmingham News as a specialty worker; his duties were to keep the printing press fed and cleaned. The record further reflects that for the first six months of his employment, Butler worked in the pressroom and, thereafter, in addition to working in the pressroom, Butler drove a truck delivering newspapers to local distribution points. The record reflects that Butler worked 15 hours of his 40-hour workweek in the pressroom and that the noise level in the pressroom exceeds the level established by the Occupational Safety and Health Administration unless hearing protection is worn. Butler testified that from 1977 to 1983 he was not provided with hearing protection. The evidence discloses that for two to three months in 1983 Butler delivered newspapers to city branches exclusively, then he began working in the mail room running an insert machine, a machine that inserts coupons, the Parade magazine, and other circulars into newspapers. Butler testified that he worked in the mail room from 1983 to 1991 and that while in the mail room, he learned how to operate a stacker; a stacker is a machine that stacks newspapers into bundles after they come off the insert machine. Butler further testified that while working in the mail room, he also learned to operate the tie machine, which ties the newspaper bundles together. The evidence reflects that the mail room is very noisy, so noisy that OSHA standards require hearing protection be worn while working therein. During the eight years that he worked in the mail room, Butler also worked in the control* room off and on; the control room houses the computers that control the presses. The record evidence reflects that hearing protection is not required to be worn by workers in the control room.
Additionally, the record reflects that The Birmingham News has its employees’ hearing tested on a regular basis as part of its hearing conservation program. Butler testified that his hearing had been tested regularly at work, beginning in 1977 until he left in 1991; however, in 1989, he was notified by The Birmingham News that he had failed a routine hearing test and that he had to be retested or he could not work. The record further reflects that after Butler’s hearing was retested, he was notified by The Birmingham News that there had been a change in his hearing and that if he desired, it would set up an appointment for him with Dr. Rodney Ott. The record also discloses that The Birmingham News did not change Butler’s job after he failed the routine hearing test and the retest.
Butler went to Dr. Ott for an examination on April 10, 1989. Dr. Ott, a board certified ears, nose, and throat specialist, examined Butler and had a hearing test performed on him. Dr. Ott testified that he found Butler to have a moderate straight line hearing loss from nerve damage, but that in his opinion Butler’s hearing loss was not caused by exposure to excessive levels of noise at The Birmingham News. Dr. Ott further testified that, in his opinion, Butler could have returned to work if he wore hearing protection. Dr. Ott further testified that nerve damage can be caused by noise; a congenital loss at birth; medications given to a patient throughout his life, such as streptomycin; ear infections; and head injuries. Dr. Ott also testified that Butler had no history of a congenital loss of hearing; no history of taking medications that could cause nerve damage; and no history of a head injury, but that Butler did have a history of continual exposure to noise. Last, Dr. Ott testified that he *299 could not pinpoint a specific cause of Butler’s nerve damage and hearing loss.
Additionally, Dr. Richard Gilliland, an ears, nose, and throat specialist and Butler’s treating physician, testified by deposition that he had examined Butler and had performed a hearing test on him on March 7, 1991. Dr. Gilliland testified that he found Butler to have a moderate, but significant, nerve-type hearing loss and that Butler was getting close to being required to wear a hearing aid. Dr. Gilliland also testified that nerve-type hearing loss can be caused by noise exposure; genetic or hereditary problems; diabetes; high blood pressure; high fever; unusual autoimmune diseases; and drug side effects, such as some antibiotics taken by seriously ill people. Dr. Gilliland further testified that in his opinion Butler’s hearing loss was not a drug-induced problem or caused by disease, but that it could be the result of several overlapping problems. However, Dr. Gilliland testified that Butler had no history of genetic or hereditary problems; no history of diabetes or high blood pressure; no history of drug side effects; and that if Butler had a genetic or hereditary problem, it could be aggravated by noise exposure. Dr. Gilliland further testified that Butler’s hearing will not get any better and may get worse, and that he recommended that Butler not work in a noisy environment.
The record further reveals that The Birmingham News sent Butler to Dr. Thomas Bordon, an associate professor at the University of Alabama at Birmingham (who holds a Ph.D. in audiology, the science of hearing). Dr. Bordon performed two auditory brain-stem response (ABR) tests on Butler in January and February 1989. Dr. Bordon testified that the ABR test is an objective test that measures the electrical impulses that travel up the auditory nervous pathway through the brainstem to the brain. Dr. Bordon performed the test twice on Butler because of the difficulty Butler experienced hearing Dr. Bor don’s questions during the first test. The record reflects .that Dr. Bordon found that Butler had a mild hearing loss when Butler was listening to questions face to face with him, but when, using pure tone test (the patient listens to tones through a headset), he found that Butler suffered a moderate hearing loss. However, Dr. Bordon did not have an opinion as to the cause of Butler’s hearing loss.
In its judgment, the trial court stated:
“The court has sympathy for [Butler] and it recognizes [that he] may have some physical disorder, but the court finds that the disorder does not stem from an on-the-job injury or occupational disease.... From all the evidence the court is not reasonably satisfied of the allegations made by [Butler].”
Our supreme court has held that the standard of medical causation in workmen’s compensation eases is whether the hazard involved was a contributing cause of the injury or an aggravation of a disease suffered by a worker. Ex parte Valdez, 636 So.2d 401 (Ala.1994); Ex parte Cash. Our supreme court has further held: “A hazard can be a contributing cause if it is one of multiple factors acting in concert to bring about the occupational disease.” Valdez, 636 So.2d at 405 (citations omitted). After carefully reviewing the record, it appears that the trial court applied the wrong standard for determining medical causation. Id. We must, therefore, reverse the judgment of the trial court and remand this case for the trial court to' determine, according to the standards set out in Valdez and Cash, whether Butler suffered a condition that was aggravated by exposure to noise and/or whether Butler suffered an occupational disease for which noise exposure was a contributing cause.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THIGPEN and YATES, JJ., concur.