L. CHARLES WRIGHT, Retired Appellate Judge.
Allen Lane Floyd died from a heart attack while employed with Boyd Brothers Transportation Company, Inc. His three minor children filed an action to recover workmen’s compensation benefits. Following oral proceedings, the trial court denied recovery. The children appeal.
The record reflects that Floyd was a long-haul truck driver for Boyd Brothers and had been so employed since the summer of 1988. Before Floyd was hired, the company doctor examined him and pronounced him fit to drive a truck. In December 1986 Floyd had angioplasty surgery, in which a blockage in one of his arteries was corrected. In January 1987 the results of a stress test showed that there was no longer any blockage. Floyd was released to resume work at that time.
On April 21, 1989, Floyd was in a terminal in Danville, Virginia, to pick up a load of coated boards. Alan Gilbert, an employee of Boyd Brothers, testified that immediately prior to Floyd’s death, he and a trainee helped Floyd cover his load with a tarp. Floyd than assisted Gilbert and the trainee in tarping another load. Gilbert explained that there were two tarps for each load and that the tarps weighed between 75 and 80 pounds each. He explained that it took approximately one and one-half hours to tarp the loads. He indicated that they started tarping between 7:00 and 7:30 p.m. Floyd agreed to meet Gilbert at a diner down the road after he “cleaned up.” Between 8:30 and 9:00 p.m., Gilbert received word at the diner that Floyd had died in the cab of his truck. Gilbert testified that Floyd had not complained of chest pains.
Floyd’s wife testified that she was originally told by Boyd Brothers that Floyd had sustained a heart attack while driving down the interstate. She testified that she heard two versions. According to the first version, Floyd went across the median into an open field, where there was a trailer court. An older woman found him and called paramedics, who transported him to the hospital. The second version was that Floyd had died in the parking lot or “not too far” from the terminal.
Floyd’s wife testified that she spoke to her husband approximately four times on the date of his death. Phone records were offered to prove the fact. The wife testified that during these conversations, Floyd complained about having chest pains. He stated that he felt like someone was sitting on his chest and he was smothering. He told her that when he asked to be released from duty, his dispatcher said that he needed to make his run. The wife testified that when she called someone with Boyd Brothers named “Linda” and asked that Floyd be released to go to the doctor or to the emergency room, she was told that he had to transport his load. She testified that she spoke with someone in Virginia who had been assisting Floyd with putting the tarps on the trucks. *94 This person told her that Floyd looked pale, weak, and sick while tarping the trucks.
Linda Burns, a dispatcher with Boyd Brothers, testified that she did not recall speaking with Floyd’s wife on the date of his death. She testified, however, that on the date of his death, Floyd told her that he did not feel well and asked for a load that would bring him back to Alabama. Burns stated that in a later telephone conversation, Floyd told her that he wanted to see his doctor in Alabama. She testified that she told him that she was unable to make arrangements for his truck to be unloaded on that Friday. She informed him that he would have to wait until Monday to get back to Birmingham to see his doctor.
The dispatcher described Floyd as a hardworking driver, who did a good job and worked long hours. She agreed that the only time Floyd had ever said anything about needing his doctor was on the date of his death.
Dr. Anderson Morris, Floyd’s cardiovascular doctor, testified that he treated Floyd for heart problems in 1986 and 1987. According to Morris, Floyd did not have any physical limitations as of January 1987. Dr. Morris opined that if, indeed, Floyd had driven from the Wisconsin/Michigan area to Virginia, had been experiencing chest pains on the day of his death, had spent the immediate time period prior to his death tarping two trucks, and had then been found dead, Floyd’s employment contributed to his death. Dr. Morris further stated that if Floyd was having chest pains which represented a heart attack and continued to work, the work probably contributed to his chances of developing arrhythmia, which, according to Morris, would have been the immediate cause of death. In his opinion, Floyd died of a heart attack and resulting arrhythmia.
The trial court denied benefits, finding that Floyd was not involved in any strenuous activity at the time of his death; that the wife’s testimony conflicted with the dispatcher’s testimony; that it found the dispatcher’s testimony to be more credible, although the dispatcher stated that Floyd did call in complaining of being sick and wanting to see his doctor; and that it did not find Dr. Morris’s testimony to be persuasive. In short, the trial court found that Floyd’s children failed to prove causation. The children appeal and assert that the trial court’s order was not supported by the evidence.
In a workmen’s compensation case, this court’s review is limited to a determination of whether there is any legal evidence to support the trial court’s findings. If a reasonable view of the evidence supports the findings of the trial court, this court may then determine whether the correct legal conclusions have been drawn therefrom. Ex parte Eastwood Foods, Inc., 575 So.2d 91 (Ala.1991).
To establish requisite causation in a heart attack case, a medical-factual causal connection must be demonstrated — that is, that the employee in performance of his duties on the job was exposed to a danger or risk materially in excess of that to which people not so employed were exposed, and that this danger was the cause, or contributing cause, of death. Leaseway Transportation Corp. v. Burgett, 500 So.2d 1091 (Ala.Civ.App.1986); Newman Brothers, Inc. v. McDowell, 354 So.2d 1138 (Ala.Civ.App.1977).
The trial court found in essence that the rational mind could not causally connect Floyd’s heart attack with his employment. We disagree. The evidence was undisputed that Floyd had been suffering from chest pains on the day of his death and that immediately preceding his death, he had assisted in putting tarps on two trucks. The testimony of his doctor, that Floyd’s work-related activities on the day of his death probably contributed to his death, was also undisputed. It was further undisputed that long-haul driving is a stressful occupation and that Floyd could have driven up to 1,200 miles the 10 days preceding his death. This evidence was sufficient to show, at least prima facie, that Floyd’s work-related activities contributed to his death-. The unsettling aspect of this case is that Boyd Brothers presented no evidence to the contrary. We find the trial court’s rationale in denying the benefits to be unreasonable.
*95 It appears to us that the only reasonable view of the evidence requires a finding that Floyd’s work-related activities contributed to the cause of his death. Ex parte Patterson, 561 So.2d 236 (Ala.1990). In Leaseway Transportation and in Newman Brothers, this court determined that truck drivers who had exerted themselves while putting heavy tarps over their trucks and later suffered a heart attack satisfied the causation test. We further find that Floyd’s preexisting heart condition did not preclude recovery. Newman Brothers.
The judgment of the trial court is reversed. The matter is remanded for further proceedings to determine the amount of death benefits payable to the children.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12 — IS—10(e), Code 1975.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and THIGPEN, YATES, and MONROE, JJ., concur.
CRAWLEY, J., dissents.