SAM A. BEATTY, Retired Justice.
Emrose Curry, Sr., appeals from a judgment in favor of the City of Mobile in his action against the City to recover workmen’s compensation benefits, specifically, permanent partial disability and/or loss-of-earning-capaeity benefits, that he sought as the result of an injury he had suffered on the job.
Following a hearing, the trial court, in a comprehensive and well-reasoned opinion, denied benefits to Curry. The pertinent portions of that opinion are quoted here:
“1. As stipulated and agreed upon by the parties during trial, the Court finds that the date of the Plaintiffs accident at work was November 15, 1991; both the Plaintiff and the Defendant were subject to the Workmen’s Compensation laws in effect at the time of the Plaintiffs injury in November 1991; Plaintiffs accident occurred in the line and scope of his employment with the Defendant; Plaintiffs average weekly wage at the time of his injury was $346.38 and his compensation rate for temporary total disability was $230.92; and Defendant has paid Plaintiff 11 weeks of temporary total disability benefits. It is also undisputed that the Plaintiff is over the age of nineteen (19) years and can read and understand the English language. The Court further finds that there is no dispute that the Employer, the City of Mobile, has paid the actual cost of all authorized and reasonably necessary medical and surgical treatment attributed to the Plaintiffs injury to his back. As set out by the parties during trial, the only issue to be decided in this case is the nature and extent of disability, if any.
“2. The Court finds that [because] the Plaintiffs accident occurred in November of 1991, this is an ‘old Act’ case and should be decided in accordance with the law that was applicable at the time of the accident. Henderson v. Johnson, 632 So.2d 488 (Ala.Civ.App.1993). Further, in a ease such as this, ‘[t]he basis for compensation [if any] is the decrease in earning capacity.’ Allen v. Metro Contract Services, Inc., 421 So.2d 1289, 1293 (Ala.Civ.App.1982). The Plaintiff complains of an injury to his back. The Code of Alabama, § 25-5-57(a)(3)g. *801 sets forth the procedure for calculating awards for non-scheduled injuries. ‘That section provides an award of two-thirds of the difference between the average weekly earnings of the employee at the time of his injury and the average weekly earnings the employee is able to earn in his partially disabled condition.’ Goodyear Tire & Rubber Co. v. Mitchell, 459 So.2d 901, 902 (Ala.Civ.App.1984) [overruled on other grounds, Ex parte St. Regis Corp., 535 So.2d 160, 163 (Ala.1988)]. Further, the Court finds that ‘[w]hen an employee’s post-injury earnings equal or exceed his pre-injury earnings, there exists a presumption that the employee has suffered no loss of earning capacity.’ Raines v. Browning-Ferris Industries of Alabama, Inc., 638 So.2d 1334, 1337 (Ala.Civ.App.1993). ‘This presumption can be rebutted by independent evidence of incapacity, or evidence indicating that the employee’s post-injury earnings are an unreliable basis for determining earning capacity.’ Id.
“3. The Court finds that the Plaintiff is 48 years old and completed nine grades of education. The Plaintiff has basically worked as a heavy equipment mechanic during his work life. At the time of his accident on November 15, 1991, the Plaintiff was working as a heavy equipment mechanic for the Defendant. At the time of his accident, the Plaintiff was lifting a heavy battery and complained of injury to his back.
“4. The Court finds that a few days after his accident in November of 1991, the Plaintiff went to see Dr. Joseph Galloway. Dr. Galloway’s diagnosis was a lumbar strain and he put the Plaintiff on light duty for three days. (Defendant’s Exhibits 2, 3 and 13.) He indicated that the Plaintiff could return to full duty after three days and that the Plaintiff was to ‘follow-up prn.’ (Defendant’s Exhibits 3 and 13.) However, the Plaintiff never returned to see Dr. Galloway. He returned to his job and after a while, went to other doctors on his own, such as Dr. Fleet and Dr. Nether-land. Even before his accident on November 15, 1991, the Plaintiff went to see Dr. Thomas Coleman on November 8, 1991, and complained of some right shoulder and right leg and hip pain. (Defendant’s Exhibit 14.)
“5. The Court finds that the Plaintiff was subsequently sent to Dr. Guy Rutledge, Jr. Dr. Rutledge treated the Plaintiff from 08/05/93 until 01/10/94. (Defendant’s Exhibit 15.) As noted in Dr. Rutledge’s letter to Butch Walker dated 08/05/93, the Plaintiff complained of similar symptoms at that time as he complained to Dr. Coleman about before the date of his accident. (Defendant’s Exhibit 15, p. 1, ¶ 3 of letter dated 08/05/93.) The Plaintiffs lumbar spine films were within normal limits, he had a full range of back motion without spasm, his neurological examination was normal, and the MRIs only showed changes secondary to degenerative and aging changes and not acute injuries. (Defendant’s Exhibit 15.) Dr. Rutledge kept Plaintiff at work and could not find a ‘clear-cut cause’ for the Plaintiffs numerous complaints.
“6. The Court finds that the Plaintiff went to see Dr. Andre Fontana for a second opinion in January 1994. (Deposition of Dr. Fontana, p. 6.) Dr. Fontana first suspected that Mr. Curry had a herniated disc and ordered a CT scan for further evaluation. (Deposition of Dr. Fontana, p. 8.) However, the CT scan showed that the Plaintiff did not have a herniated disc. (Deposition of Dr. Fontana, pp. 8-10.) It showed that the Plaintiff had a spondylolis-thesis which existed prior to his accident at work but which was aggravated by the accident according to Dr. Fontana. (Deposition of Dr. Fontana, pp. 9-11 and pp. 18-21.) Dr. Fontana’s diagnosis was a chronic lumbosacral strain superimposed on the spondylolisthesis. (Deposition of Dr. Fon-tana, pp. 20-21.) Dr. Fontana kept Mr. Curry off work for a while, assigned him a six percent impairment, and indicated that Mr. Curry could perform full-time work in the light, manual, sedentary range. (Deposition of Dr. Fontana, pp. 13 and 21.) Dr. Fontana testified that Mr. Curry reached maximum medical improvement on August 30, 1994. (Deposition of Dr. Fontana, p. 11.)
*802 “7. The Court finds that Mr. Curry has been for a while, and is presently, working for the Defendant as an Auto Service Worker I at the Motor Pool. It is undisputed that Mr. Curry is making more money now than he did at the time of the accident. Mr. Curry admitted this at trial, and Richard Aikens testified that the Plaintiff made $1,501.00 a month at the time of his accident and currently makes $1,738.00 a month. According to Dr. Fon-tana and Mr. Curry, Mr. Curry is basically able to perform all of the duties of his current job. (Deposition of Dr. Fontana, pp. 13-16 and pp. 17-18.) It is clear from the evidence that the Defendant has accommodated the Plaintiff in this job and that he is not made to lift tires or climb ladders and is able to work within the restrictions set out by Dr. Fontana. The Plaintiff testified that he can do all the other functions of this job. His current supervisor, Jimmy Linaras, testified that the Plaintiff is doing the job well and is a benefit to his department. He also testified that the Plaintiff is doing a ‘real’ job that needs to be done. Further, it was made clear at trial that the City has obtained approval through the Mobile County Personnel Board for the Plaintiff to have this job on a permanent basis and this job has been officially offered to the Plaintiff. Testimony at trial indicated that the Plaintiff could get pay raises at this job if other City employees got raises and there is no guarantee that he would have gotten any raises at his old job.
“8. The Court finds that the Plaintiffs post-injury earnings exceed his pre-injury earnings and therefore, there exists a presumption that the Plaintiff has suffered no loss of earning capacity. The Court further finds that the Plaintiff has not rebutted this ‘presumption’ by either independent evidence of incapacity nor by presenting evidence that his post-injury earnings are an unreliable basis for determining his earning capacity. According to the Plaintiffs own vocational expert, Tom Christiansen, based on the Plaintiffs present work status, the Plaintiff has no loss of wage earning capacity. It was clear at trial that Mr. Christiansen did not take into account the Plaintiffs present job when giving his opinion that the Plaintiff sustained a 55 to 60 percent vocational loss.
“9. The Court finds that the Plaintiff has not sustained a loss of earning capacity as a result of his accident at work on November 15, 1991. Therefore, it is ORDERED, ADJUDGED and DECREED that no workmen’s compensation disability benefits are due the Plaintiff from the Defendant. However, it is further ORDERED, ADJUDGED and DECREED that the Plaintiff shall remain entitled to future medical benefits, pursuant to the provisions of the State of Alabama Workmen’s Compensation Act, for reasonable and necessary medical treatment for his injury of November 15, 1991, to the extent provided by the Alabama Workmen’s Compensation Act.”
This court’s review, under the applicable law, is limited to determining whether there is any evidence in the record to support the trial court’s finding that Curry did not sustain a loss of earning capacity as a result of his work-related accident and whether any reasonable view of that evidence supports the judgment below. Ex parte Eastwood Foods, Inc., 575 So.2d 91 (Ala.1991); Harrison v. Champion Int’l Corp., 550 So.2d 1001, 1002 (Ala.Civ.App.1989). This court has examined the record and the briefs of the parties. As the trial court’s opinion demonstrates, such evidence exists. The correct legal principles having been applied to those facts, it follows that the judgment must be, and it is hereby, affirmed.
The foregoing opinion was prepared by SAM A. BEATTY, Retired Justice, Supreme Court of Alabama, while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
AFFIRMED.
All the judges concur.