This is a workmen's compensation case.
Melvin Randall Kent sued for workmen's compensation benefits because of injuries he claimed to have suffered while employed by E.C. Corporation (employer).
After an ore tenus proceeding, the trial court entered an order finding that Kent had suffered an on-the-job injury which resulted in "a [permanent] loss of earning capacity and a vocational disability in the amount of thirty percent (30%) to the body as a whole." Accordingly, the trial court awarded benefits, an attorney's fee, and future medical expenses to Kent; hence, this appeal.
The employer's only issue on appeal is whether the trial court erred in determining that Kent's injury was a non-scheduled injury under the workmen's compensation laws. Specifically, the employer argues that there is no evidence to suggest that the effects of Kent's knee injury extended to any other part of his body and, therefore, it argues, Kent's recovery should have been limited to the schedule provisions of Ala. Code 1975, § 25-5-57(a)(3)a.
We initially note that our review in a workmen's compensation case is a two-step process. Ex parte Eastwood Foods, Inc.,575 So.2d 91 (Ala. 1991). First, we must determine if there is any legal evidence to support the trial court's findings. If such evidence is found, we then must determine whether any reasonable view of that evidence supports the judgment of the trial court. Eastwood, supra.
In Ala. Code 1975, § 25-5-57(a)(3)a., workmen's compensation benefits for permanent partial disability are based on an enumerated schedule which separately provides for the loss of certain body parts or members. Ala. Code 1975, §25-5-57(a)(3)g., bases benefits in all other cases on the employee's loss of earning ability. *Page 1358 
In Bell v. Driskill, 282 Ala. 640, 646, 213 So.2d 806, 811
(Ala. 1968), however, our Supreme Court stated:
 "[A]lthough the injury itself is to only one part or member of the body, if the effect of such injury extends to other parts of the body, and produces a greater or more prolonged incapacity than that which naturally results from the specific injury, or the injury causes an abnormal and unusual incapacity with respect to the member, then the employee is not limited in his recovery under the Workmen's Compensation Law to the amount allowed under the schedule for injury to the one member."
At trial, Kent testified that he worked for the employer as an installer of acoustical ceilings and drywall, and that his job involved frequent climbing. Kent testified that, on the day of the accident, he climbed some scaffolding to demonstrate to another worker the required duties for completing a particular job. Kent testified that, as he was climbing down, his right foot became hung on a ladder step, his leg twisted, and he heard a loud "pop" and felt a pain rush through his leg. According to Kent, the other worker, who was standing on the ground, asked what the noise was and Kent told him it was his knee. Kent then loosened himself and lowered himself to the ground. Kent testified that he went to a doctor after a couple of days and eventually was referred to Dr. Philip Maddox, an orthopedic surgeon.
Dr. Maddox testified by deposition that, according to information provided by Kent on his first visit, Kent was 36 years old and had suffered a work-related injury to his right knee. Kent complained of pain and some swelling in that knee, along with "locking" and a "popping" sensation. According to Dr. Maddox, Kent had never "injured his knee in the past, no other joints were affected and he was fairly healthy otherwise." Dr. Maddox later performed two separate surgical procedures, one on Kent's right knee, and one on Kent's tibia (leg bone). Dr. Maddox testified that Kent tolerated the procedure well and that, thereafter, follow-up visits were arranged.
According to Dr. Maddox, Kent's recovery was impeded only by a breathing problem apparently caused by a prescribed medication, which was corrected by discontinuing the medication. Dr. Maddox testified that, in follow-up visits, he continued to adjust Kent's medications, and that Kent's complaints were related to pain and swelling of his right knee.
Dr. Maddox stated that, during one of Kent's follow-up visits, he complained primarily about symptoms which Dr. Maddox assigned to arthritis in Kent's knee. Dr. Maddox noted that these symptoms were associated with the tear in Kent's meniscus and, at the time of Kent's surgery, arthritic changes were evident in Kent's tibia and femur (thigh bone). Dr. Maddox also testified that the tear in Kent's meniscus caused other problems, such as the "locking" and "popping" in his knee, and that the tear could cause roughening and tearing of the surfaces between the femur and the tibia.
During deposition, Dr. Maddox was cross-examined and responded as follows:
 "Q. Were all of his complaints related to the right knee?
"A. Yes.
 "Q. Did he have any complaints at all other than with his right knee?
 "A. I did not ask him that specific question, and he did not volunteer any information to me.
"Q. Were any of the joints affected?
"A. No other joints were affected.
". . . .
 "Q. Do you feel that there were any other problems other than with his right knee?
"A. I had no reason to think so.
 "Q. With the arthroscopic surgery that was performed on June 13th, 1990, were there any other problems found other than in the lateral compartment of the knee?
"A. No.
". . . . *Page 1359 
 "Q. Has he ever at any time registered any complaints which were not related to his right knee?
"A. I don't believe he has."
Kent testified that, prior to the injury to his right knee, he had never had any problems with that area of his body, and that he was physically fit at the time of the accident. He further testified that, after the surgery, he had problems with swelling, stiffness, and fluid build-up in his knee, which he associated with the work-related injury. As a result, he had been prescribed anti-inflammatory medications by Dr. Maddox, but certain complications and reactions required the prescriptions to be changed.
On cross-examination, Kent testified as follows:
 "Q. The pain you are experiencing, Mr. Kent, that is limited to your knee, is it not?
"A. That is correct.
 "Q. You don't have any other problems with any other part of your body except for your knee, is that correct?
"A. Basically that is correct.
 "Q. As a result of this injury you do not have any other problems with any of the parts of your body except your knee, is that correct?
 "A. Well, Dr. Maddox has it listed that I have a little bit of tinnitus starting now because of — well, he told me to take over-the-counter —
 "Q. . . . Other than your knee, do you experience any other problems in any other part of your body except your knee?
"A. Just tinnitus in the ears, that is it.
"Q. In the ears?
 "A. That's correct. If you take aspirin and pain killers to an extreme amount it causes a condition of tinnitus, a ringing of the ears and a slight loss of hearing, Dr. Maddox has that listed.
 "Q. I'm asking you, sir, what problems do you have with your ears?
 "A. Ringing of the ears and a slight loss of hearing. That's why I was taken off the over-the-counter pain killers and relegated to Endomycin.
 "Q. You are saying that as a result of the accident you now have problems with your ears, is that correct?
 "A. Just the pain killers from that you have to take."
In our review of the record, we find no legal evidence to suggest that Kent's injury meets the standard stated earlier inBell, supra. We also note that "a knee injury which causes a partial use of a leg comes within the provisions of a scheduled injury." Patrick v. FEMCO Southeast, Inc., 565 So.2d 644, 645
(Ala.Civ.App. 1990). Consequently, we hold that Kent's workmen's compensation benefits should have been computed using the schedule provisions of Ala. Code 1975, § 25-5-57(a)(3)a. Accordingly, the judgment is due to be reversed and the cause remanded for the trial court to enter an order consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
RUSSELL, J., concurs.
ROBERTSON, P.J., dissents.
 *Page 276