This is a workmen's compensation case.[1]
Carey Lane Goodwin filed a complaint in August 1990, alleging that he had injured his right knee in the course of his employment with Sullivan, Long Hagerty, Inc. (Sullivan). Following an ore tenus proceeding, the trial court entered a judgment finding that Goodwin had suffered a 36% loss in his ability to earn. Sullivan's post-judgment motion was denied; hence, Sullivan appeals. The trial court awarded Goodwin compensation, but declined to award Goodwin interest and penalties and to include fringe benefits in the computation of the average weekly wage; hence, Goodwin cross-appeals.
This case was tried without a court reporter and the judgment reveals that the parties stipulated to the following pertinent facts:
 "1. While employed by [Sullivan], [Goodwin] on August 2, 1988 and May 2, 1989, suffered injury to his right knee by accident arising out of and in the course of that employment.
 "2. The injury by accident on the two dates referenced in 1. next above, resulted in a total medical impairment of 30-35% to the right lower extremity.
 "3. [Goodwin]'s average weekly wage at all relevant times was $578.80. With reservation depending on ERISA case. (He had fringe benefits.) [Goodwin] contends fringe benefits should be included.
 "4. [Goodwin] is 51 years old, has a high school education, and has worked in sheet metal worker jobs since 1961 (at least 10 of these have been supervisory).
 "5. There are $140.00 in unpaid medicals to date under Alabama Code § 25-5-77.
 "6. If called to testify, [Goodwin]'s vocational specialist, Claude Peacock, would testify that [Goodwin] currently is 36%-40% vocationally disabled (this figure does not consider jobs that would be available if [Goodwin] were given reasonable accommodations).
 "7. The sole remaining issues for trial are the extent of [Goodwin]'s permanent partial disability inclusion and exclusion of fringes in average weekly wage, and any penalty on TTD [temporary total disability] or PPD [permanent partial disability].
"8. [Goodwin] is owed $2,653.71 in TTD.
 "9. Maximum Medical Improvement was reached on October 29, 1992.
 "10. [Goodwin] was underpaid 6 weeks 5 days of TTD from August 30, 1991 to October 29, 1991 as set forth in 8 above."
The trial court made these additional findings of fact:
 "1. [Goodwin] testified that his injuries and pain are confined to his right knee, and that there are no other problems with other parts of his body.
 "2. Based on his age, education, work experience and the evidence from Dr. Hill and [Goodwin] concerning [Goodwin's] physical restrictions, this Court concludes that [Goodwin] has suffered a 36% loss in his ability to earn. *Page 495 
 "3. [Goodwin's] average weekly wage was $578.80 and all fringe benefits sought were paid for entirely by [Sullivan] pursuant to a health and welfare employee benefit plan.
 "4. [Goodwin] suffered 83 weeks 2 days of temporary total disability, having reached maximum medical improvement on October 29, 1992; [Sullivan] has paid already [a portion], leaving a balance due of 6 weeks 5 days."
Additional facts were incorporated into a Rule 10(d), A.R.App.P., statement of evidence, which was approved by the trial court as a correct statement of the evidence in this case. The salient facts contained in that document are summarized as follows: Goodwin testified that his injury was limited to his right knee, and that the problems he had been having with his knee after the accident had generally been resolved after surgery, although at the time of the trial, he said he was still experiencing knee pain with certain activities. He further testified regarding his physical activities and restrictions and said that he has no problems performing routine household chores and yard work. Goodwin also testified that after his second knee injury, he continued working at Sullivan's, earning the same pay, until February 1991, when Sullivan had a reduction in force. Goodwin further testified that he was offered two jobs with two other companies after his employment ended with Sullivan, that Sullivan no longer employs anyone at the location where he had worked, and that his disability benefits from his union continue only so long as he does not work in the construction or sheet metal field.
Goodwin's physician, Dr. Hill, testified that Goodwin had been released to work or to do whatever he pleased, within certain established restrictions, and that he had assigned an impairment rating of 30% to Goodwin's leg.
The dispositive issue on Sullivan's appeal is whether the trial court erred in awarding Goodwin a recovery based on loss of earning capacity. Sullivan argues that Goodwin's recovery is limited to the scheduled-member provisions of the workmen's compensation laws.
On his cross-appeal, Goodwin argues that the trial court erred in (1) not assessing a penalty on the unpaid temporary total disability benefits, (2) not awarding prejudgment interest at the rate of 6% on the unpaid temporary total disability benefits and on all permanent partial disability benefits, (3) not awarding post-judgment interest at the rate of 12% from the date of the trial court's order, and (4) not including fringe benefits in the calculation of weekly wages.
Review in a workmen's compensation case is a two-step process. Ex parte Eastwood Foods, Inc., 575 So.2d 91
(Ala. 1991). First, the court must "look to see if there is any legal evidence to support the trial court's findings," and next, "[i]f such evidence is found, then the reviewing court determines whether any reasonable view of that evidence supports the trial court's judgment." Eastwood at 93. Furthermore, we must affirm the trial court's judgment if it is supported by even one reasonable view of the evidence, "even if another, perhaps better reasoned, view of the evidence might have dictated a different outcome." Ex parte Veazey,637 So.2d 1348, 1349 (Ala. 1993). Legal conclusions, however, are not entitled to a presumption of correctness. Eastwood, supra.
Ala. Code 1975, § 25-5-57(a)(3), controls compensation for permanent partial disability. The statute provides a schedule, which addresses compensation for the loss of specific body parts or members. Ala. Code 1975, § 25-5-57(a)(3)a. Benefits for all permanent partial disabilities that are not enumerated are based on the employee's loss of earning ability. Ala. Code 1975, § 25-5-57(a)(3)g.
Our Supreme Court has set forth the test to determine when an injury to a scheduled member falls outside the scheduled-member provisions of § 25-5-57(a)(3)a., as follows:
 "[A]lthough the injury itself is to only one part or member of the body, if the effect of such injury extends to other parts of the body, and produces a greater or more prolonged incapacity than that which naturally results from the specific injury, or the injury causes an abnormal and unusual incapacity with respect to the member, *Page 496 
then the employee is not limited in his recovery under the Workmen's Compensation Law to the amount allowed under the schedule for injury to the one member."
Bell v. Driskill, 282 Ala. 640, 646, 213 So.2d 806, 811 (1968).
This court recently addressed this issue in a case with facts very similar to the facts in the instant case. E.C. Corp. v.Kent, 618 So.2d 1357 (Ala.Civ.App. 1992). There, Kent, like Goodwin, suffered a work-related injury to his knee, requiring surgery. Kent testified that his pain was limited to his knee and that he had no problems with any other part of his body. Appellate review disclosed no legal evidence to suggest that Kent's injury met the Bell standard. This court reversed the trial court's judgment and held that "Kent's workmen's compensation benefits should have been computed using the schedule provisions of Ala. Code 1975, § 25-5-57(a)(3)a." Kent
at 1359.
In the instant case, the trial court expressly found that Goodwin's "injuries and pain are confined to his right knee, and that there are no other problems with other parts of his body." According to the evidentiary statement, Goodwin testified that the injury was limited to his right knee. There is absolutely nothing in the record that extends Goodwin's injury to other parts of the body or causes his incapacity to meet the Bell standard stated above. The trial court's award of benefits based on a percentage of permanent partial disability is inconsistent with its findings regarding the limitation of the injury. Having expressly found that the injury was confined, the trial court reached an incorrect conclusion of law regarding the extent of the disability. Accordingly, the trial court erred when it awarded Goodwin benefits based upon a loss of earning capacity rather than upon the provisions in the schedule. Ala. Code 1975, § 25-5-57(a)(3)a. Therefore, that portion of the trial court's judgment must be reversed and the cause remanded for entry of an order consistent with this opinion.
On cross-appeal, Goodwin first argues that the trial court erred in denying his request to assess a penalty on the unpaid temporary total disability benefits. He contends that he is entitled to the penalty because Sullivan stipulated, at trial, that Goodwin had been underpaid.
In pertinent part, Ala. Code 1975, § 25-5-59, states: "If any installment of compensation payable is not paid without goodcause within 30 days after it becomes due, there shall be added to such unpaid installment an amount equal to 10 percent thereof, which shall be paid at the same time as, but in addition to, such installment." (Emphasis added.)
It is well settled that where evidence is presented ore tenus, "the trial court's findings are presumed correct and will not be disturbed unless palpably erroneous, without supporting evidence, or manifestly unjust." Howell v. Bradford,570 So.2d 643, 644 (Ala. 1990). It is the duty of the trial court, when it receives conflicting ore tenus evidence, to resolve the conflict and render a judgment accordingly. Jonesv. LeFlore, 421 So.2d 1287 (Ala.Civ.App. 1982).
The trial court found that the parties had "a good faith dispute regarding the compensation due in this matter" and the evidence supports that finding. Goodwin has shown no error in the trial court's denial of the penalty.
Next, Goodwin argues that the trial court erred in not awarding prejudgment interest on the unpaid benefits. Our Supreme Court has clearly disposed of this issue by stating: "[P]re-judgment interest could not be awarded in a workmen's compensation case unless the Act expressly provided for it. Pre-judgment interest would be part of a claimant's 'rights and remedies' governed exclusively by the Act." Ex parte Stanton,545 So.2d 58, 59 (Ala. 1989). The Act does not provide for such interest, and Goodwin has shown no error in the trial court's decision not to award pre-judgment interest.
Goodwin next asserts that he is entitled to post-judgment interest at the rate of 12% from the date of the trial court's order. In its brief, Sullivan agrees with Goodwin's assertion, if this court affirms the trial court's monetary judgment. This issue was not presented *Page 497 
to, nor decided by, the trial court, and, therefore, we cannot find error; however, we are compelled to note that our Supreme Court has held that post-judgment interest should apply to a workmen's compensation judgment. Stanton, supra. Ala. Code 1975, § 8-8-10, provides for interest at the rate 12% per annum on judgments for the payment of money. Our Supreme Court concluded that this section authorizes the payment of post-judgment interest on a workmen's compensation judgment distinguishing post-judgment interest from pre-judgment interest by noting that "[t]he interest in this case is on a judgment, not on a 'right or remedy' the claimant had under the Act." Stanton at 59.
Goodwin's final argument is that the trial court erred in not including fringe benefits in the calculation of his weekly wages. This court's holding that Goodwin's recovery is limited to the provisions regarding scheduled members disposes of this issue, and there is no need to address exactly what constitutes weekly wages in this case. Additionally, Ala. Code 1975, §25-5-57(a)(3)f., provides that scheduled-member compensation "is subject to the same limitations as to maximum and minimum weekly compensation as stated in section 25-5-68." In pertinent part, § 25-5-68(b) states that "the maximum compensation payable for permanent partial disability shall be no more than the lesser of $220.00 per week or 100 percent of [the employee's] average weekly wage." Goodwin's average weekly wage, as stipulated, exceeds the statutory limitation, excluding any fringe benefits. Therefore, the issue concerning inclusion of certain fringe benefits in his average weekly wages is moot.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and YATES, J., concur.
[1] The review of this case is governed by Ala. Code 1975, § 25-5-1
et seq., the Workmen's Compensation Act, which was in effect before the amendments of May 19, 1992.