Marion R. O'Rear filed suit for workmen's compensation benefits after sustaining an injury to his back while performing his job for Southern Lifestyle Homes (Southern). Following an ore tenus proceeding, the trial court found O'Rear to be permanently and totally disabled. The trial court then awarded O'Rear benefits as provided for by §25-5-57(a)(4)a., Code 1975. Southern appeals, contending that the trial court erred by finding O'Rear to be permanently and totally disabled.
We note that the test for total disability is the inability to perform one's trade or to obtain reasonably gainful employment. The employee is not required to be absolutely helpless or to suffer total physical disability. Price'sBar-B-Que v. Carter, 541 So.2d 38 (Ala.Civ.App. 1989). It is the duty of the trial court to make some determination as to the extent of disability. The trial court is not bound by expert medical testimony and, in making its determination, must consider all the evidence, including its own observations, and interpret it to its own best judgment. Genpak Corp. v. Gibson,534 So.2d 312 (Ala.Civ.App. 1988).
Our review of the trial court's judgment in workmen's compensation cases is a two-step process. We must first determine whether there is any legal evidence to support the trial court's findings. If legal evidence is found, we must then determine whether any reasonable view of that evidence supports the trial court's judgment. Ex parte Eastwood Foods,Inc., 575 So.2d 91 (Ala. 1991). *Page 647 
The record reveals that O'Rear, who assembled mobile homes for Southern at its facility in Addison, Alabama, injured his back on March 22, 1989, while sliding an interior wall off a work table. O'Rear testified that when the accident occurred, he felt a sharp pain across his lower back, radiating down into his right leg. O'Rear sought treatment in the emergency room of a nearby hospital, where X-rays were taken, and O'Rear was given something for his pain. He was released and told to see his family doctor, who prescribed pain medication and eventually hospitalized him for 10 days.
Subsequent to his hospitalization, O'Rear was referred to Dr. Joseph Sherrill, an orthopedic surgeon, who became his treating physician. Following diagnostic testing, Dr. Sherrill determined that O'Rear was suffering from a bulging disk and disk degeneration at the L4/L5 level of his back. Dr. Sherrill, who saw O'Rear during a two-year period prior to trial, testified that O'Rear was treated with cortisone injections, muscle relaxants, and physical therapy, all "with very limited success"; that O'Rear continued to complain to him of pain in his back and leg and to demonstrate weakness and restricted back motion; that he did not think back surgery would be helpful to O'Rear at this time; and that he expected O'Rear's condition to continue "at its present level." Dr. Sherrill indicated that O'Rear also had shown signs of depression due to his physical problems. He did not think O'Rear would be able to return to a manual-labor type job that required him to engage in lifting or to stand for any length of time. He assigned O'Rear a total physical impairment rating of 14%.
Dr. Sherrill referred O'Rear to TriCare Rehabilitation Center (TriCare) for a "functional capacities evaluation" to determine his suitability for a work-hardening program. Dr. Andrew Rozsa, a clinical psychologist and director of TriCare, testified that O'Rear performed poorly on functional evaluations administered at TriCare. However, Dr. Rozsa stated that he felt O'Rear was poorly motivated and had not put forth maximum effort. Dr. Rozsa said that while he did not believe O'Rear was malingering, he felt that he was engaging in "symptom magnification." Dr. Rozsa acknowledged, however, that pain is a largely subjective phenomenon. It was Dr. Rozsa's opinion that O'Rear would benefit from a work-hardening program administered by TriCare and that he was capable of at least sedentary work.
When questioned with regard to O'Rear's performance at TriCare, Dr. Sherrill stated that O'Rear's poor performance could be attributed to his limited functional capacity and was not necessarily due to any lack of motivation. Dr. Sherrill testified that he believed O'Rear's complaints were sincere and indicated that O'Rear had always cooperated in his efforts toward treatment.
At trial O'Rear testified that he has not performed his job with Southern for approximately two years; that he continues to suffer from back pain; that his pain is especially bad after walking or when he has overexerted himself; that he has difficulty bending over; that he is limited in the amount of weight he can lift; and that he is unable to perform even menial tasks around the home. O'Rear stated that he felt he could no longer engage in employment involving manual labor, and he indicated that his injury caused him to worry about his future prospects.
The record shows that O'Rear was 33 years old at the time of trial. He testified that although he completed the tenth grade in school, he was "more or less pushed through the system." He stated that he has poor math skills and that he has been hindered by illiteracy. He testified that his reading abilities are so poor that it was necessary for him to take an oral examination to receive his driver's license, that he cannot read the newspaper, and that he might be able to read something only a little more complicated than "Jack and Jill went up the hill." He stated that all of his employment experience has been in manual labor jobs and that due to his educational background and lack of reading abilities, he did not believe that there were many sedentary jobs available to him.
Claude Peacock, Southern's vocational expert, testified that he believed O'Rear was currently capable of sedentary work. He stated that if O'Rear were to be restricted to sedentary work, his vocational disability rating *Page 648 
would be 58% to 59% and that if he were to undergo a work-hardening program, his vocational disability rating would be as low as 29% to 30%. Peacock indicated that O'Rear placed in the lowest one-third of the general adult population on the employee aptitude survey and that, according to an achievement test he administered, O'Rear was at a fourth-grade level in arithmetic and below a third-grade level in reading. Peacock, however, questioned whether O'Rear made a sincere effort on the test.
Dr. William Crunk, O'Rear's vocational expert, testified that he conducted interviews with O'Rear and reviewed his medical records. It was Dr. Crunk's opinion that O'Rear was 100% disabled from securing gainful employment. Dr. Crunk stated that his opinion took into consideration O'Rear's functional impairment, his physical pain, his emotional stress and depression, his work history, his educational background, and his lack of reading abilities.
Southern asserts that evidence was presented to the effect that O'Rear could still work and that he should avoid only heavy manual labor. The weight of the evidence is for the trial court's determination. Genpak, supra. There was evidence that O'Rear is unable to seek gainful employment or do menial tasks because of pain. Moreover, there was evidence that O'Rear's educational background makes him an unlikely candidate for even sedentary employment.
Southern argues that the evidence showed that O'Rear is capable of benefiting from retraining and that he failed to cooperate in rehabilitation efforts and that, therefore, the award of permanent and total disability benefits was improper. Whether an employee can be retrained is a question of fact. Den-Tal-Eze Mfg. Co. v. Gosa, 388 So.2d 1006
(Ala.Civ.App. 1980). The trial court could properly find the evidence insufficient to support retraining O'Rear to another vocation, especially in view of O'Rear's employment history in manual labor jobs and his lack of reading skills.
There was conflicting evidence as to the extent of O'Rear's cooperation with efforts toward rehabilitation. While Dr. Rozsa suggested that O'Rear did not cooperate fully with TriCare during its evaluation process, there was evidence indicating that during the two-week evaluation period, O'Rear missed only one session, due to car trouble. Further, there was testimony from Dr. Sherrill, as well as O'Rear's own testimony, contradicting Dr. Rozsa's opinion that O'Rear did not put forth full effort while at TriCare. The weight given by the trial court to the conflicting evidence is not before us. Den-Tal-Eze Mfg., supra.
Based upon our review of the record, we conclude that the trial court's finding that O'Rear is permanently and totally disabled is supported by legal evidence. A reasonable view of that evidence supports the trial court's judgment.Eastwood Foods, supra. That judgment is, therefore, due to be affirmed.
AFFIRMED.
THIGPEN and YATES, JJ., concur.