MONROE, Judge.
This is a workers’ compensation case.
The claimant, Betty M. Lowe, was employed as a public safety dispatcher for the City of Bayou La Batre. On September 13, 1991, while at work, she fell backwards and struck the back of her head on a counter. Immediately after the fall, she went to Mos-tellar Medical Center for treatment. She continued to work for about a week after the fall, but then was unable to work for several weeks. During December 1991 she returned to work part-time, but she did not return to work after that month. Lowe was 57 years old at the time of the fall.
At the trial, conducted on May 6,1996, the parties stipulated that Lowe’s average weekly wage for the 52 weeks preceding her injury was $283.59, that she had been paid temporary total disability benefits of $189.07 until she reached maximum medical improvement, and that all her medical expenses incurred before the trial had been paid by the City.
The depositions and medical records of several of Lowe’s treating doctors were introduced at trial. Dr. Edmund Dyas, an orthopaedist, began treating Lowe for pain in her neck and shoulders on October 3, 1991. He had treated her for neck pain in 1988 and had noted then that she had developed osteoarthritis in her cervical and thoracic spine. On her visit on -October 3, 1991, Dr. Dyas ordered an MRI, which indicated that Lowe suffered from degenerative disc changes at C4-5 and C5-6, but did not indicate any disc herniation. On January 8, 1992, Dr. Dyas determined that Lowe was unable to continue to work, because of her neck pain and nervousness caused by the stress of her job. Dr. Dyas also performed surgery on Lowe’s left thumb to correct her carpal metacarpal arthritis.
Dr. Dyas continued to treat Lowe for her neck pain until August 1994. He determined that Lowe had a 10% disability to the body as a whole related to her cervical and lumbar *426 spine injuries. In a letter to an attorney dated July 17, 1993, he stated that he believed Lowe was permanently and totally disabled. Dr. Dyas explained in his deposition that, although he assigned Lowe a 10% disability as a result of her injury on September 13,1991, Lowe is functionally totally disabled because of the combination of her physical ailments, including chronic anxiety, headaches, degenerative arthritis in the neck and back, bilateral cataracts, osteoarthritis of her thumbs and right knee, bursitis of the hip and shoulder, bunions, and clawed toes. He also stated that he felt that, although she had suffered from degenerative problems with her spine that were caused by aging, the fall may have been the event that made her neck and back pain intolerable.
Dr. Dyas referred Lowe to Dr. Curtis Graf, a neurologist. Dr. Graf determined that Lowe was neurologically normal and concluded that her degenerative disc changes were due to wear and tear. He determined that she had reached maximum medical improvement on May 17, 1994, and assigned her a 5% permanent disability rating for her neck and shoulder injury. He stated that he thought she could return to “light work, part time.”
Lowe was also evaluated by Dr. Donald Mulkerne, a professional counselor, who stated that, from a psychological standpoint, Lowe would be capable of working. Dr. Russel Hudgens, a neurosurgeon, examined Lowe on November 16, 1992. His report indicates that he diagnosed her with degenerative changes that were aggravated by her fall. He assessed a 5-10% permanent partial disability because of the degenerative changes.
Douglas Miller, a vocational rehabilitation counselor, testified regarding Lowe’s vocational disability and discussed the report he had prepared based on Lowe’s medical history. He determined that Lowe had worked in several “skilled, light, and sedentary employments throughout her life.” He further found that she is currently “restricted to non-stressful, light/sedentary employments,” and he determined that she had lost access to 95% of the job categories previously accessible to her. He also determined that if she were to seek employment she could probably earn only the minimum wage, which, compared with her previous salary, was a 42% loss of earning capacity. Based on these findings, Miller concluded that Lowe had a 68% vocational disability rating.
Lowe testified that the pain in her neck and shoulders prevents her from performing the job that she used to do, which required her to sit and lean over a desk and to talk on the phone. She stated that, although she had had arthritis béfore she fell, it had never prevented her from working. She stated that, since the fall, she cannot handle stressful situations and that her job was stressful to her. She stated that she is able to drive to do her errands because she can do so at her leisure and is under no stress or strain, but that she gets “very nervous” if she has to be anywhere at a certain time.
After hearing the testimony, the trial court entered a judgment finding that Lowe had sustained a 5% permanent partial disability and “a commensurate diminution of earning capacity” and awarding Lowe workers’ compensation benefits under § 25-5-57(a)(3)g., Ala.Code 1975, in accordance with that finding. Lowe appeals.
The injury that is the subject of this case occurred before August 1, 1992, the effective date of the standard-of-review provisions of the new Workers’ Compensation Act. § 25-5-81(e), Ala.Code 1975. Therefore, our standard of review is limited to a determination of whether there is any legal evidence to support the trial court’s findings. If such evidence exists, then this court must determine whether a reasonable view of that evidence supports the trial court’s judgment. Ex parte Eastwood Foods, Inc., 575 So.2d 91 (Ala.1991). “Where one reasonable view of the evidence supports the trial court’s judgment, the judgment must be upheld, even if another, perhaps better reasoned, view of the evidence might have dictated a different outcome.” Ex parte Veazey, 637 So.2d 1348, 1349 (Ala.1993).
Lowe argues that the trial court erred in finding that she had been paid all of the temporary total disability benefits to which she was entitled. At trial, Lowe’s *427 counsel argued that the City had not paid benefits based on her total weekly wage, because the amount paid was based on her salary and excluded fringe benefits of $68.32 per week, which included contributions to a retirement fund and premiums for health insurance and life insurance. In its judgment, the trial court found that Lowe had earned a weekly wage of $283.59 plus fringe benefits of $68.32, for a total of $351.91 weekly wage. However, the record indicates that temporary total disability benefits were paid in the amount of $189.07 per week, the amount that results from calculating 66 2/3% — the rate provided by § 25-5-57(a)(1) — of $283.59.
Section 25-5-57(b), Ala.Code 1975, provides the method for computing workers’ compensation benefits; it states, in pertinent part:
“Whatever allowances of any character made to an employee in lieu of wages are specified as part of the wage contract shall be deemed a part of his or her earnings.”
Interpreting this language, this court and the Alabama Supreme Court have held that benefits such as those at issue constitute “allowances of any character” and thus should be included in the computation of an employee’s weekly wage. Ex parte Murray, 490 So.2d 1238 (Ala.1986); Goodyear Tire & Rubber Co. v. Gilbert, 521 So.2d 991 (Ala.Civ.App. 1987), cert denied, 521 So.2d 992 (Ala.1988). Also, in the present case there is no indication or allegation that the fringe benefits were provided gratuitously or were not paid “in lieu of wages ... as part of [Lowe’s] wage contract.” See, contra, Farmers Home Gin v. Christopher, 668 So.2d 796 (Ala.Civ. App.1995). Thus, it appears that temporary total benefits should have been computed based on the value of Lowe’s average weekly wage including the fringe benefits.
However, § 25-5-1(6) provides:
“WAGES OR WEEKLY WAGES. The terms shall in all cases be construed to mean ‘average weekly earnings,’ based on those earnings subject to federal income taxation and reportable on the Federal W-2 tax form which shall include voluntary contributions made by the employee to a tax-qualified retirement program, voluntary contributions made by the employee to a Section 125 cafeteria program, and fringe benefits as defined herein. Average weekly earnings shall not include fringe benefits if and only if the employer continues the benefits during the period of time for which compensation is paiid. ‘Fringe benefits’ shall mean only the employer’s portion of health, life, and disability insurance premiums.”
(Emphasis added.)
The record indicates that the City continued to provide those benefits from the date of the injury until approximately February 1992. The City’s record of payments made to Lowe indicates that her health insurance was transferred to COBRA effective March 1, 1992; however, there is no indication that the City paid those premiums. Although Lowe is not entitled to temporary total benefits based on the fringe benefits for the time that the City continued to provide the benefits, as § 25-5-1(6) provides, we conclude that no reasonable view of the evidence and of the trial court’s findings supports its conclusion that Lowe had been paid all the temporary total benefits to which she was entitled. Although the record indicates that no fringe benefits were provided after February 1992, her temporary total benefit payments remained the same after that date. Therefore, that portion of the trial court’s judgment is reversed; on remand the trial court is to ascertain the period for which Lowe was not provided her fringe benefits and to order that she be compensated accordingly.
Lowe also argues that the trial court erred in determining that she suffers only a 5% loss of earning capacity. The trial court found that “the great weight of all the expert testimony in this case places the Plaintiffs disability at between five and ten percent.” The trial court determined that Lowe suffered a 5% permanent partial disability and a 5% reduction of earning capacity. Lowe argues that the trial court erroneously equated disability with loss of earning capacity. Lowe further argues that the trial court ignored the evidence that indicated that she is totally disabled. She argues that the trial court’s assessment of a 5% loss of earning *428 capacity, based on her job-related injury, ignores her other physical problems, which, she argues, combined with her injury to render her 100% disabled for workers’ compensation purposes.
Total disability means the inability to perform one’s trade, not absolute helplessness. Southern Lifestyle Homes v. O’Rear, 628 So.2d 645 (Ala.Civ.App.1993). The percentage of physical disability is not equivalent to the loss of ability to earn, and is not the only factor relevant to determining the loss of ability to earn. Littleton v. Gold Kist, Inc., 480 So.2d 1236 (Ala.Civ.App.1985). In assessing a worker’s loss of earning capacity, the trial court is to consider other factors, such as education, age, experience, training, and general health. Allen v. Metro Contract Services, Inc., 421 So.2d 1289 (Ala.Civ.App.1982).
Lowe’s permanent injury does not involve a scheduled member; therefore, compensation for that injury is to be computed in accordance with § 25-5-57(a)(3)g., Ala.Code 1975. That section provides, in pertinent part:
“In all other cases of permanent partial disability not above enumerated, the compensation shall be 66 2/3 percent of the difference between the average weekly earnings of the workman at the time of the injury and the average weekly earnings he is able to earn in his partially disabled condition.”
This court has held that this provision requires that a compensation award be based on the worker’s lost earning ability. Smither v. International Paper Co., 540 So.2d 760 (Ala.Civ.App.1989). In Smither, we held that the trial court had committed reversible error by equating physical disability with lost earning capacity. See also, Bolding v. Fluorocarbon Co., 660 So.2d 1808 (Ala.Civ.App.1995).
Three of Lowe’s treating physicians assessed her physical disability at between 5% and 10%; however, the only evidence of her vocational disability was the testimony of the vocational expert, Douglas Miller, who stated that he had determined that Lowe had suffered a much higher loss of ability to earn. This testimony was uncontradicted. Based on our review of the record, we conclude that no legal evidence supported the trial court’s finding that Lowe had suffered only a 5% loss of earning capacity; we also hold that no reasonable view of the evidence supports the trial court’s judgment. Therefore, that portion of the trial court’s judgment determining Lowe’s lost earning capacity and awarding compensation based on that determination is reversed. On remand, the trial court is to make a proper determination of Lowe’s lost earning capacity.
REVERSED AND REMANDED.
YATES and CRAWLEY, JJ., concur.
ROBERTSON, P.J., concurs in the result.
THOMPSON, J., dissents.