YATES, Judge.
Richard E. Cox sued his employer, North River Homes, seeking to recover workers’ compensation benefits for injuries he alleged he had sustained during the course of his employment. Following an ore tenus proceeding, the trial court denied benefits. Cox appeals.
Cox began working for North River Homes in January 1985. At that time he had had 17 years’ experience working in the mobile home industry, and he had worked for three other mobile home companies doing the same kind of work he was hired to do at North River Homes. During those 17 years, Cox had never been off work for an on-the-job injury and had never sought workers’ compensation for an on-the-job injury.
Cox was injured three times during the course of his employment with North River Homes. He was first injured in 1986 when he strained his back and was off work for two to three weeks. He returned to his same job after the 1986 strain. The X-ray of his lumbar spine taken in the course of treatment and diagnosis of that injury showed a “normal lumbar spine.”
In October 1991, Cox suffered his second injury, this time to his neck and shoulder. The injury occurred when a glue barrel that he was loading fell and pinned his legs. As he tried to lift the barrel off his legs, he tore muscles in his neck and right shoulder. Cox reported the injury to his foreman, and he was sent for approved medical treatment. He attended physical therapy for approximately three months. Cox was then released to return to work on light duty; however, he was assigned his regular job, which was heavy labor, not light work. After returning to work from the October 1991 injury and up until the time of the trial, Cox continued to experience pain and numbness in his shoulder and neck.
In October 1992, Cox suffered his third injury, while lifting a 700- to 800-pound beam. Cox stated that.while he was lifting it, something in his back “pulled loose” and his lower back started burning and aching. He reported the injury to his foreman, but his foreman would not give him a slip to go to a doctor. Cox went on his own to the company doctor the next morning. The company doctor took him off work, but told him that there was nothing he could do for him. North River Homes subsequently referred Cox to Dr. Benjamin Buchanan, an orthopedic surgeon.
Cox first saw Dr. Buchanan on October 13, 1992. He noted that Cox had an acute sinusitis and bronchitis problem and he diagnosed an acute lumbosacral strain in addition to a chronic spondylolisthesis with an apparent resolving L5 radiculopathy. In deposition, Dr. Buchanan stated that a spondylolis-thesis can result from a stress fracture.
In May 1993, Dr. Buchanan testified by deposition that heavy work such as Cox was performing on the day of his injury could contribute to cause the spondylolisthesis to become symptomatic, stating: “It can aggravate the back through a system of strain or pain.” He read from, his dictated reports, in which he had diagnosed Cox as having an acute lumbosacral strain, an L5 radiculopa-thy, evidence of degenerative spurring at the L3-4 disc level, and a bulging disc, none of which, he said, was attributable to spondylo-listhesis. Dr. Buchanan further testified that he could not say that the October 1992 injury trauma did not cause the disc bulge. However, on November 11,1992, Dr. Buchanan had formed the opinion that Cox’s injury was not job-related. On December 4, 1992, Cox was denied further workers’ compensation benefits because of Dr. Buchanan’s diagnosis of a chronic condition.
Dr. Buchanan performed back surgery on Cox on December, 16, 1992. The surgery included an L4-5 diskectomy bilaterally, partial L4 laminectomy, a Gill laminectomy for the spondylolisthesis, exploration of the L5 nerve root bilaterally, and bilateral/lateral fusion of the L4 sacral area. Cox suffered from various complications relating to the surgery. At one point, he was hospitalized for approximately two weeks because of a complication. North River Homes paid none of the medical expenses.
Two to three months after the surgery, Cox went to Dr. Chester Boston, an orthopedic surgeon, because he felt that he was not getting any better. He complained of persis *746 tent pain in his back and in both legs. Dr. Boston ordered an MRI, which confirmed the surgical treatment Cox had had and demonstrated a spondylolisthesis.
Dr. Boston explained that a spondylolisthe-sis is a condition that begins to develop during adolescence and that may or may not be symptomatic. If it is symptomatic, it is frequently symptomatic after an injury. Dr. Boston stated that Cox’s history was consistent with an injury causing his spondylolis-thesis to become symptomatic. He testified that, to a reasonable degree of medical certainty, he thought Cox’s existing spondylolis-thesis was exacerbated by the trauma of his October 1992 injury.
Dr. Boston recommended a second surgery, but Cox did not feel that he could go through another surgery. Cox testified that he continues to experience a great deal of pain in his back and numbness in his legs and that he is often unable to sleep and cannot perform normal household duties. He cannot afford pain medication. Cox has not been employed since the October 1992 injury. He testified that he did not believe that there was any job that he could perform.
Michael Staff, Cox’s vocational expert, testified that, to a reasonable degree of vocational certainty, he considers Cox to suffer a 100% vocational disability. North River Homes never offered any retraining or rehabilitation to Cox and never offered him a job he could return to within his limitations.
Cox’s medical records, before his injuries at North River Homes, showed the following: In October and November 1977, Cox had gone to Dr. Carroll Sasser on three occasions, complaining of headaches, backaches, stomachaches, coughing episodes, and elevated temperature. Following each visit, Cox was diagnosed with bronchitis.
In 1978, at the request of a potential employer, Cox underwent a complete physical examination, in which an X-ray of his lumbar spine was taken. The X-ray showed a transitional vertebra, but, otherwise, nothing remarkable in the lumbar spine. There was no testimony as to what “transitional vertebra” is, but Dr. Boston’s testimony indicated that it is not spondylolisthesis. Dr. Sasser, who had performed the examination, found Cox to be fit for employment. Cox was not aware that he had transitional vertebra.
In 1985, Cox filled out an application for employment with North River Homes. Cox answered “no” to the question “Have you ever had any form of back injury?”.
The production manager for North River Homes testified that he would not have placed Cox on a heavy-duty job if he had known of his “preexisting” back problems. He testified that the only information he had concerning the preexisting back problems was Dr. Sasser’s 1977 report, wherein Cox had complained of headaches, backaches, and congestion, and had been diagnosed with bronchitis.
Cox filed this action alleging that he was owed benefits for the October 1991 injury to his shoulder and neck and for the October 1992 injury to his back. The court denied benefits for the 1991 injury. It further denied benefits for the 1992 injury, finding that Cox had a preexisting condition; that he had misrepresented that fact on his employment application; and that the preexisting condition had substantially increased the risk that he would become disabled from a foreseeable accident or job-related activity.
Cox asserts that the court erred in determining that he had “failed to demonstrate any loss of earning capacity or loss of use of a scheduled member as a result of the [1991] injury to his [neck and] shoulder.”
Cox’s 1991 injury to his neck and shoulder is governed by the two-step standard of review set forth in Ex parte Eastwood Foods, 575 So.2d 91 (Ala.1991). Initially, this court must determine if there is any legal evidence to support the trial court’s findings; if such evidence is found, then this court must determine whether any reasonable view of the evidence supports the judgment of the trial court. Id.
The court found in its order that after the 1991 injury, Cox “returned to work at the same job and the same pay.” An employee who sustains a work-related injury and then returns to work at equal or greater pay is presumed not to have sustained a loss of earning capacity. Harrison v. Champion *747 Int’l Corp., 550 So.2d 1001 (Ala.Civ.App.1989). The evidence supports the court’s finding. That portion of the judgment relating to the 1991 injury is affirmed.
Cox also asserts that the court erred in holding that he was barred from workers’ compensation benefits for the October 1992 injury based upon a misrepresentation in his application for employment with North River Homes.
Because Cox’s alleged injury to his back occurred in October 1992, the portion of the case relating to that injury is governed by the new Workers’ Compensation Act. The new Act provides that an appellate court’s review of the proof and its consideration of other legal issues shall be without a presumption of correctness. § 25—5—81(e)(1), Ala.Code 1975. It further provides that when an appellate court reviews a trial court’s findings of fact, those findings will not be reversed if they are supported by substantial evidence. § 25 — 5—81(e)(2), Ala.Code 1975. Our supreme court “has defined the term ‘substantial evidence,’ as it is used in § 12-21 — 12(d), to mean ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Industries, Inc., 680 So.2d 262, 268 (Ala.1996), quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). Further, we “will view the facts in the light most favorable to the findings of the trial court.” Whitsett v. BAMSI, Inc., 652 So.2d 287, 290 (Ala.Civ.App.1994). This court has also concluded: “The new Act did not alter the rule that this court does not weigh the evidence before the trial court.” Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014 (Ala.Civ.App.1995).
Misrepresentation as to physical condition or health on an application for employment is a valid defense that may preclude the recovery of workers’ compensation benefits. Ex parte Southern Energy Homes, Inc., 603 So.2d 1036 (Ala.1992). An employee who in an employment application makes false statements concerning his or her physical condition will be denied benefits if: (1) the employee has knowingly and willfully made a false representation as to physical condition; (2) the employer relies upon the false representation and this reliance is a substantial factor in the employer’s decision to hire the applicant; and (3) there is a causal connection between the false representation and the injury. The employer has the burden of proving each of these elements. Logan v. Vernon Milling Co., 668 So.2d 865 (Ala.Civ.App.1995).
The court made the following findings in concluding that Cox had misrepresented his medical history on the employment application:
“The evidence demonstrates that in January of 198[5], Richard Cox completed an application for employment with North River Homes. In the application, Mr. Cox stated that he [had] no physical defects and that he had never had a back injury.
“Gerald Terrell, the plant manager from North River Homes, testified that he was familiar with the hiring procedures that existed at North River Homes in 198[5]. The medical history provided by Mr. Cox in- connection with his application for employment was a substantial factor in hiring and job placement of the plaintiff. The evidence demonstrates that North River Homes relied on Mr. Cox’s representations that he had never had any form of back injury and his representations that he had no physical defects.
“The medical evidence demonstrates that Richard Cox was treated for complaints of back pain by Dr. Carroll Sasser in 1977 and 1978. In 1978 the plaintiff was admitted to Lister Hill [Hospital] with complaints of back pain. A CT scan was done, which indicated that Mr. Cox’s back was occasionally symptomatic with localized muscle spasm. The ,CT scan also demonstrated that Mr. Cox had a transitional yertebra at that time. The deposition of Dr. Chester Boston, which was submitted to the Court, demonstrates that an X-ray done in 1978 showed a transitional vertebra and did not show a normal spine.”
The 1977 incidents of “back pain” do not support a finding of a known preexisting *748 back defect. Each complaint of back pain was associated with illnesses involving bronchial and upper respiratory infection and elevated temperature and coughing, any of which may have caused back and body pain. Cox was not treated on any of the 1977 occasions for a defect in his back. It was unreasonable for the court to rely on records of these illnesses as evidence of a preexisting back defect that Cox had known about and had willfully misrepresented on his employment application.
Cox did not undergo a “CT scan” in 1978. The 1978 “CT scan” referred to in the court’s order was, in fact, an X-ray that was done attendant to a physical examination for employment. The potential employer had requested the physical examination and, after the X-ray and other tests were performed, Dr. Sasser reported in his medical notes that Cox’s physical condition was satisfactory for employment. Thereafter, Cox was hired by the potential employer.
There is no evidence that Cox was told the results of the 1978 X-ray. The only evidence is that Cox was reported to be healthy for employment and that he was hired by the employer requesting the physical examination. There is no evidence that Cox was treated or medicated for a transitional vertebra. There is no evidence in the record that Cox knew anything other than what he testified to, namely that he had never had a back injury or defect before his employment with North River Homes.
Of even greater significance is the fact that a report regarding a subsequent X-ray taken in July 1986 showed Cox’s lumbar spine as “normal” and specifically stated: “No spon-dylolisthesis is shown.”
We conclude that North River Homes failed to carry its burden of proof on any element of the misrepresentation defense. Because North River Homes failed to present substantial evidence on that defense, the court erred in finding that Cox had misrepresented his medical history on the employment application. That portion of the judgment is reversed.
Finally, Cox asserts that the court erred in finding that “[Cox’s] back condition is a longstanding problem and was not caused or contributed to by [his] employment with [North River Homes].” In making this finding, the court had made the following findings:
“The evidence also demonstrates that after Mr. Cox’s alleged injury to his back, he was treated by Dr. Ben Buchanan, an orthopaedic surgeon in Tupelo, Mississippi. Dr. Buchanan testified that X-rays demonstrated a bilateral pars defect at the L5-S1 level, which was considered an old grade 1 spondylolisthesis. Spondylolisthesis is a condition where one of the vertebrae slips on another. The spondylolisthesis appeared from the radiological tests to be chronically long-term and Dr. Buchanan felt that the condition had existed since he was a teenager or perhaps from birth. The spondylolisthesis would not have been caused by his work related injury of October 6, 1992. Dr. Buchanan testified that he did not feel that Mr. Cox’s problems were work related. Dr. Buehanan’s findings were also verified by bone scans which were performed. Dr. Buchanan testified that the bone scans indicated that the problem was an old chronic congenital or developmental problem.”
An employee is not precluded from collecting workers’ compensation benefits even though the worker has a preexisting condition, if the employment aggravates, accelerates, or combines with, a.latent disease or infirmity to produce disability. Dunlop Tire Corp. v. Allen, 659 So.2d 637 (Ala.Civ.App.1995). “A preexisting condition.that did not affect the employee’s work performance before the disabling injury is not considered, pursuant to the Act, to be a preexisting condition.” Id., at 639.
It is undisputed that Cox was performing his regular job duties up to the day of his October 1992 back injury. No evidence indicated that the alleged spondylolis-thesis affected Cox’s ability to perform his work for North River Homes. The court erred in denying Cox benefits for the 1992 injury. The judgment as to that issue is reversed and the case is remanded for the trial court to enter an order consistent with this opinion.
*749 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and MONROE, J., concur.
CRAWLEY and THOMPSON, JJ., concur specially.